People of the State of Illinois, on the Relation of Beverly Bank, Trustee Under Trust No. 8–0163 and 8–0046, Castle Rock Builders, Inc., an Illinois Corporation, and Major Development Corporation, a Delaware Corporation, Plaintiffs-Appellants, v. Raymond Hill, Jr., et al., and Village of Crestwood, a Municipal Corporation, Defendants-Appellees.

Gen. No. 50,540.

First District, First Division.

September 19, 1966.

Joseph Ash and George J. Anos, of Chicago (Ben Goldwater, of counsel), for appellants.

Patrick J. Kinnerk, Village Attorney, of Evergreen Park, for appellees.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiffs petitioned for a writ of mandamus to compel the Board of Trustees of the Village of Crestwood to adopt an ordinance rezoning certain Village property from single-family residential to multiple and commercial use, or in the alternative to apply the doctrine of estoppel and deny the Village the right to question the application of said property to multiple and commercial uses. Their petition was denied and, on appeal, they seek reversal of the ruling. The uncontroverted facts and circumstances in evidence are as follows:

In July 1961 plaintiff, Castle Rock Builders, Inc., contracted to purchase 37 acres consisting of four parcels of connecting farm land for the sum of $134,000. The purchase agreement provided that it was "conditioned upon the ability of the buyer to have the subject property annexed to the Village of Crestwood under proper multiple residential zoning." Thereafter, the secretary of Castle Builders informed the president of Crestwood of the terms of the purchase agreement and discussed the contemplated annexation and zoning. An arrangement was made for an informal meeting to be attended by

representatives of Castle Rock and a number of the Village trustees. The Village president testified that at this meeting he "expressed" what the secretary of Castle Rock "indicated" to him and that the trustees and he were in accord that "(T)here would be nothing detrimental to the Village in the annexation and rezoning of this property in the nature that they wanted it done." He said their feelings were "that this was something the Village would need to progress and go forward." The secretary of Castle Rock had also "expressed" to the group at that meeting that the property was being purchased subject to having it annexed to the Village. The Board members present were all in accord and each one answered in the "affirmative." The Village president then informed Castle Rock, through its secretary, that he would submit the "plat" for zoning and annexation of the property. The subject property was formally annexed in November 1961, to an area of the Village classified as First Class Residential.

The Village president requested that Castle Rock deposit $200 to defray the costs of proceedings before the Plan Commission and to take up with it the matter of rezoning. The Plan Commission, after due notice and a public hearing, recommended to the Board of Trustees that the property be rezoned for commercial and multiple dwelling. The recommendation was taken up by the Board of Trustees and passed unanimously. The president testified that when the Board meeting was over, he told an officer of Castle Rock "Well Charlie, we have lived up to our agreement and what we had discussed and what we wanted and then I said, now I see no reason why you can't go ahead and purchase the property and get the thing moving in the direction that you want it to go." He further testified that to the best of his knowledge there was no ordinance drawn rezoning this property; that he was president of the Village

71

for 18 to 20 years but had no professional knowledge as to the laws concerning zoning; that he was not aware of the fact that a formal zoning ordinance had to be adopted; that the Village Board had voted to rezone some six to eight other parcels without the formal passage of ordinances, and that some of those parcels have been put to the "rezoned" use.

The president advised Castle Rock to proceed with the purchase of the property in November 1961, and in reliance thereon it did so, paying the $134,000. However, later it encountered difficulty in obtaining the necessary financing for development of the property and placed in the early part of 1962 a "For Sale" sign on the premises indicating that the property was zoned for multiple housing and commercial structures. The sign remained on the premises until 1964 with no objection from the Village.

In fact, the Official Village Zoning District Map authorized by the Board and offered to the public indicated that it "exhibited the facts as they were" and showed the subject property to be zoned as "commercial and multiple dwelling." It had been prepared by an engineer who used all the information that had been submitted by the Plan Commission and approved by the Board of Trustees. It carried the legend:

> This map reflects the true and correct zoning of the Village of Crestwood as of April 1, 1962 and is hereby published in accordance with the Illinois State statute.

In April 1963, plaintiff, Major Development Corporation, having checked the above zoning map, entered into a contract to purchase the property in question for $288,-000. Major Development also, through its president, checked with the president of the Village and was informed that there were no changes. Cooper, of Major Development, then caused a tentative plat of subdivi-

sion to be submitted to the Village Plan Commission for approval. The Plan Commission accepted it with a few minor objections and transmitted its approval to the Village Board of Trustees in May 1963. About two weeks later, Cooper met with the Board of Trustees and was informed that a few more changes would be necessary in order to have the plan approved. At the next regular meeting of the Board of Trustees he submitted a plat of subdivision in conformance with the Board's prior request and also included the tentative plat of subdivision. He was informed that the Board needed more time to study the plat and was requested to attend the next regular meeting. It was at this subsequent meeting that he was informed that the plat was officially disapproved; that the property was not rezoned.

Major Development had expended $4,000 in the preparation of the tentative plans but further attempts by it to cause a rezoning and acceptance of its plat were rejected by the Village Board.

Plaintiffs contend that the Village Board exercised all the necessary legislative discretion in that it held public hearings, received the recommendation of its Plan Commission and decided to approve the recommendation to rezone the property. There remained only the ministerial act of transcribing the decision of the Board into the ordinance sought.

Plaintiffs further rely on the theory of estoppel claiming that they relied on the conduct and representations made to them by the officers of the Village and thereby suffered substantial injury which would not have been incurred but for these acts and representations.

■ We consider first plaintiffs' contention that the doctrine of estoppel in pais is applicable to the situation here. The doctrine is treated extensively in Cities Service Oil Co. v. City of Des Plaines, 21 Ill2d 157, 171 NE2d 605 (1961), where the court considered the propriety of an order enjoining a municipality from enforc-

ing an ordinance prohibiting the location of a gasoline station within a specified distance of any school, etc. The court, on pp 160, 161, said:

> The general rule is that a city cannot be estopped by an act of an agent beyond the authority conferred upon him. (Citing authorities.) . . . It has been stated that anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority, and that this is so even though the agent himself may have been unaware of the limitations on his authority. (Citing cases.) In matters involving strictly public rights the courts do not interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable or oppressive to enforce such public rights. (Citing authority.)
>
> The general rule is qualified, however, to enable a party to invoke the doctrine where his action was induced by the conduct of municipal officers, and where in absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what its agents had done.

The court, applying these principles to the special facts and circumstances before it, held that the city was properly estopped from enforcing an ordinance against property constructed in violation thereof.

██ ██ People ex rel. Deddo v. Thompson, 209 Ill App 570 (1918), cited in Cities Service case, confirmed the issuance of a writ of mandamus directing a municipality to issue a license to keep, conduct and operate a public garage which was in violation of an ordinance. The court said (p 572) that it has been frequently held in this State that the doctrine of estoppel in pais is applicable

to municipal corporations and that they will be estopped or not "as justice and right may require." However, the court noted that it depends largely on the "special facts and circumstances in each case" whether the doctrine will be applied and further stated that:

> The exposition of the doctrine is fully stated in People v. City of Rock Island, 215 Ill 488, and Dillon on Municipal Corporations (5th Ed), vol 3, sec 1191, and several Illinois cases are referred to where it was applied. In said case the court said what is particularly applicable to the facts here, that "where a party acting in good faith under affirmative acts of a city has made such expensive and permanent improvements that it would be highly inequitable and unjust to destroy the rights acquired, the doctrine of equitable estoppel will be applied." The court also referred to two conditions of fact also present here, "affirmative action by the public authorities with the apparent approval of everyone interested" and a change of position and great expenditure which would not have been made but for the positive action of the city and its officers.

See also Wehrmeister v. Carlman, 17 Ill App2d 171, 149 NE2d 453 (1958) and Melin v. Community Consol. School Dist. No. 76, 312 Ill 376, 144 NE 13 (1924).

In the case at bar, there is no denial that the officers of the Village of Crestwood, knowing that plaintiffs would not enter into this substantial investment unless the tract was annexed and zoned for commercial and multiple residential uses, led them to believe that these conditions were effectively carried out. There were actions with the "apparent approval of everyone interested." As the president testified "There would be nothing detrimental to the Village," and "that this was something the Village would need to progress and go for-

ward." The Plan Commission, after a public hearing with no one objecting, recommended to the Board of Trustees the requested zoning after the effective annexation. The Board of Trustees passed upon the recommendation favorably and it was only after the Village president said that they have lived up to their agreement and that he saw no reason why Castle Rock couldn't go ahead with their contract, that Castle Rock purchased the property for $134,000.

In light of these facts, we believe that the cause before us lends itself to an application of the doctrine of equitable estoppel. Clearly, it was the affirmative action by the public authorities with the apparent approval of everyone interested that caused plaintiff to change its position by making great expenditures which would not have been made but for the affirmative action of the Village and its officers. Plaintiffs' actions were induced by the conduct and representations of the municipal officers, and justice and right require that plaintiffs be granted relief.

Having determined that plaintiffs are entitled to relief by way of equitable estoppel, we find it unnecessary to pass upon the contention that the Village be required to pass a formal ordinance granting plaintiffs relief.

The order of the trial court is, therefore, reversed and the cause remanded for the entry of an order or decree directing defendants be estopped from denying plaintiffs the right to apply the subject property to commercial and multiple residential use in accordance with the plans and specifications presented to the Plan Commission and approved by it and that the trial court retain jurisdiction of the cause for the purpose of seeing that the decree is accordingly complied with.

Reversed and remanded with directions.

MURPHY and BURMAN, JJ., concur.