Harold E. Dato, et al., Plaintiffs-Appellees, v. Village of Vernon Hills, etc., Defendants-Appellants.

Gen. No. 67–54.

Second District.

January 12, 1968.

Rehearing denied February 1, 1968.

Runyard, Behanna, Conzelman, Schultz & O'Meara, of Waukegan, and John P. Murray, of Chicago, for appellant.

Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The Village of Vernon Hills brings this appeal from a decree entered February 28, 1967, by the Circuit Court of Lake County that ordered the Village to permit the plaintiffs to "construct, operate and maintain" a mobile home park on certain property within the Village and enjoined the Village from enforcing the provisions of certain amendments to their zoning ordinance against the property.

The property is a parcel of approximately 53½ acres located on the east side of Highway 83 in the Village. It has a highway frontage of 1769 feet, a depth of 1324 feet and is presently vacant. The property immediately to the north is an unincorporated area of Lake County, is zoned for agricultural purposes and used for the growing of nursery stock. The property directly to the

south is within the Village of Long Grove and although it is zoned residential it is used as a 300-acre experimental farm by Abbott Laboratories. Across Highway 83 to the west there is a large farm, also within Long Grove, but that portion of the farm directly across from the subject property is too low to cultivate. To the east, the property is bounded by a 210 foot right-of-way of Commonwealth Edison Company upon which are erected electrical transmission towers. The Village of Vernon Hills has an unusual shape, similar to a backward L, with this property being its westernmost extension.

In 1961, the Village adopted a comprehensive zoning ordinance that classified the west 20 acres of the parcel, fronting on Highway 83, as "B–1," a business use, and the remainder as "R–5." Under the R–5 Zoning Classification, mobile trailer parks were a permitted use and all uses permitted under R–5 were permitted, by a cumulative provision, under B–1. In the summer of 1963, Harold Dato contacted the owner of the property, Gordon Clavey, in regard to a possible purchase. When Dato learned that the property could be used for a mobile home park, he entered into a contract on December 31, 1963, to purchase the property from Clavey at a price of $4,500 an acre, provided that the necessary permits and licenses could be obtained. Dato proceeded to obtain surveys, engineering plans and a general plan from the National Mobile Home Association for the development of the property as a mobile home park. Water and sewer facilities were assured for the property under the terms of an agreement with the privately owned Vernon Hills Utility Company whereby Clavey paid $2,500 and Dato $2,500 with the understanding that Dato's portion would be refunded from future connection fees from the property if his particular project did not materialize.

On May 4, 1964, Dato and Clavey met privately with one R. Bennett, a Village trustee, and advised him of their plans and discussed permit fees. Bennett indicated

that he thought the plans were "O.K." but advised them to discuss the matter informally with the other trustees before making an official application. On May 18, Dato and Clavey met Dr. Proctor, also a trustee and later, President of the Village, who also stated that the plans appeared satisfactory but advised against formal action until he could set up an informal meeting with the other trustees. At a regular meeting of the Village Board on May 19, a petition was presented by Wilfred Agosta, a private citizen, requesting that all property zoned R–5 in the Village be reclassified R–4, a zoning classification that prohibited trailer parks.

On June 2, Agosta's petition was set for public hearing on June 19, before the Zoning Board of Appeals. On June 16, Dato presented his plans officially to the Board, requested the permits and deposited $4,900 towards the payment of the fees. The June 16 meeting of the Board was recessed until June 23 at which time the Board accepted the recommendation of the Zoning Board, pursuant to their hearing, that all property zoned R–5 in the Village be reclassified R–4 and informed Dato that his application for permits was insufficient. Dato presented additional plans on July 6 to correct the alleged insufficiencies but on July 7 the Board again accepted the recommendation of the Zoning Board. On July 14, Dato was advised that his application was denied, although no reason was given, and his deposit returned.

On January 8, 1965, Dato and Clavey brought suit against the Village to declare the zoning amendments invalid as to their property and the case proceeded to trial on March 1, 1966. In June, 1966, three months after the proofs were closed but prior to the decision of the trial court, the Village rezoned the B–1 portion of the property to R–4.

The proceedings in the lower court included a full trial on the merits of the amended zoning ordinance itself including evidence as to value, uses of property in the im-

mediate neighborhood, highest and best use and the other familiar factors to be considered in any litigation of a zoning ordinance. However, the trial court made no finding on those issues but decided the case on the basis of an equitable estoppel. The court filed a detailed and meticulous memorandum of opinion in support of its decision that found that ". . . the entire record as to the activities of the village board in its formal sessions, when taken in view of the suggestions made by various members, including the President of the Board, in informal meetings with petitioner, reveals an inequitable course of conduct on the part of the village which this court finds difficult to condone." The court concluded that because of the inequitable conduct of the village and in view of the substantial expenditures made by Dato in reliance on the zoning that the Village was estopped from enforcing the restrictions of the amended zoning ordinance against the property.

██ ██ As a general rule, property owners have no vested rights in the continued existence of any particular zoning classification. An exception to that rule has been recognized in those instances where there has been a substantial change of position, expenditures or incurrence of obligations by a property owner after the issuance of a building permit or in reliance upon the probability of its issuance. Cos Corp. v. City of Evanston, 27 Ill2d 570, 576, 577, 190 NE2d 364. The courts have concluded that in those cases the property owner has acquired a vested property right irrespective of any subsequent change in the zoning classification by a legislative body. Chicago Title & Trust Co. v. Palatine, 22 Ill App2d 264, 267, 160 NE2d 699. There has been no definitive expression as to when an expenditure has become sufficiently "substantial" to create a vested right.

██ The Village agrees that Dato has expended to date the sum of $2,438.87 for surveys, engineering and organizational expenses and has incurred obligations for

115

a further $1,400. They contend that the $2,500 paid to the utility company cannot be considered an expenditure since it is to be repaid to Dato although on a basis that is somewhat uncertain. It would be a grave mistake, in the view of the Village, to conclude that these sums constitute a "substantial expenditure" since it would invite a property owner to insure the continuance of favorable zoning by a relatively small investment and thereby prevent any further legitimate legislative control over the use of the property. It is correctly pointed out that in the reported cases to date that expenditures have been described as "substantial" only in instances that involved far greater sums than $2,438.87 or even $4,938.87. Although we are not convinced that an expenditure of this size should not be considered substantial, we do not feel that it is necessary to rule on that point. In the case of Phillips Petroleum Co. v. City of Park Ridge, 16 Ill App2d 555, 149 NE 2d 344 (1958), the plaintiff, Phillips Petroleum had an option to purchase a certain lot located within the City that was zoned "D," a commercial classification that included service stations as a permitted use. On October 19, 1956, Phillips applied for a building permit. The building inspector referred the application to the city council at its next regular meeting on November 6. The council passed a resolution that set up a commission to review all zoning within the city and ordered the building department to refuse all applications for service station permits pending the recommendation of that commission. Phillips demanded a permit and, when it was refused, brought a mandamus action against the City. The trial court dismissed the suit and the zoning ordinance was subsequently amended to prohibit service stations. The Appellate Court for the First District, in reversing the trial court, concluded that the positions of the parties had crystallized as of the date that application for the permit under the existing zoning was made and that the City had no authority to refuse the permit. The court

recognized that the City could always rezone property but only in accordance with the provisions of the Cities and Villages Act and that the resolution of November 6 was an invalid attempt to "suspend" the existing zoning. It was not contended that Phillips had made any substantial expenditures or that they had a vested right in the class "D" zoning. The court stated, in part, at page 566, as follows:

". . . It would be a strange perversion of the law to hold that the defendants could now take advantage of their own wrong and in effect say that by virtue of the subsequent amendatory ordinance the plaintiff could now be prevented from building and operating a filling station since it had not taken any steps under which it could have acquired a vested right, when the reason that it had not was because it was prevented from acting by the invalid resolution passed by the city council. The rights of the parties crystallized at the time when the permit was applied for and was improperly withheld. To hold otherwise would be to give the city, without statutory authority, a right to suspend a zoning ordinance."

The Village would distinguish this case on the basis that the formal application by Dato for the permit was made on June 16 whereas the Board had commenced at least the preliminary procedures for rezoning including the requisite public hearing by that date. It is obvious, however, that the delay in the application was caused by the actions of the trustees themselves for reasons that must be characterized as, at best, questionable. It is not surprising that Dato followed the advice of the trustees and withheld his application but it would be obviously inequitable to permit the Village to take advantage of his accommodation to them to his material detriment. While, ordinarily, a court will not estop a municipality in matters that involve strictly public rights, it will do so "under special

117

■■■

circumstances which would make it highly inequitable or oppressive to enforce such public rights." Cities Service Oil Co. v. City of Des Plaines, 21 Ill2d 157, 161, 171 NE2d 605 (1961) ; People ex rel. Beverly Bank v. Hill, 75 Ill App2d 69, 73, 74, 221 NE2d 40 (1966) ; Paulus v. Smith, 70 Ill App2d 97, 109, 217 NE2d 527 (1966).

■ Under the circumstances disclosed by the record in this case, we cannot but agree with the trial court that the conduct of the Village was such as to estop it from any attempt to apply the zoning amendments to this property.

Judgment affirmed.

DAVIS, P. J. and MORAN, J., concur.