FEIWEL OSINA *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellants.—(DAVID L. ARKIN *et al.*, Defendants.)

(No. 59610;

First District (4th Division)—May 14, 1975.

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale and Robert R. Retke, Assistant Corporation Counsel, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (Charles J. O'Connor, J. Herzl Segal, and Maurice J. Nathanson, of counsel), for appellees.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The plaintiffs, Feiwel Osina, Miriam Osina, Birchwood Beach Convalescent Homes, Inc., and Cosmopolitan National Bank of Chicago, as trustee under Trust No. 8470, brought this action in the Circuit Court of Cook County against the defendants, City of Chicago, John P. Maloney, Zoning Administrator of the City of Chicago, Morgan M. Finley, Jack Guthman, Thomas P. Keane, John P. Kringas and Cecil A. Partee, together constituting the Zoning Board of Appeals of the City of Chicago, as well as named citizens of the City of Chicago.

This suit was brought to reverse the decision of the Zoning Board of Appeals denying plaintiffs' application for a special use permit for the construction of a five-story building to be used as a nursing home in an R-4 General Residence District. The circuit court found for the plaintiffs and directed the zoning administrator of the City of Chicago to process plaintiffs' building application for the construction of the nursing home. The defendants appeal from that judgment.

The issues for review are whether the circuit court found that the decision of the Zoning Board of appeals is against the manifest weight of the evidence; whether the plaintiffs proved by clear and convincing evidence that the proposed use meets the standards specified by the zoning ordinance for the issuance of a special use permit; and whether the Planned Unit Development and the Lakefront Protection ordinances may be retroactively applied to the plaintiffs' use.

The plaintiffs are owners of four contiguous parcels of land generally referred to as 7350, 7360, 7364 and 7372 North Sheridan Road in the City of Chicago. The property is improved with four older buildings and has a frontage of 375 feet between Sherwin Avenue on the south and Jarvis Avenue on the north. In 1959 the plaintiffs acquired and began operating the two nursing homes at 7350 and 7364 North Sheridan Road. The home at 7350 has facilities for 39 patients, and the one at 7364 has facilities for 32 patients. The property at 7360 was acquired by the plaintiffs in 1964 and is operated as a boarding house for 25 persons. It is not licensed as a nursing home. The property at 7372 was acquired in 1968 and is operated as an apartment building.

The properties are located in an area zoned R-4 General Residence District, which is composed of older, single-family dwellings, older style apartment buildings, and some newer four-plus-one apartment buildings. Under the 1957 Comprehensive Amendment of the Chicago Zoning Ordi-

nance, nursing homes were classified as permitted uses in the R-4 District, but the 1970 amendment to the ordinance changed the classification of nursing homes from a permitted use to a special use.

In January of 1972, the plaintiffs applied for a special use permit to construct a modern five-story building housing 225 patients. They proposed to demolish the existing structures and erect a nursing home which conformed to the rules and regulations of the Department of Public Health of the State of Illinois and the Department of Health of the City of Chicago, both of which required an upgrading of the present facilities.

On February 18, 1972, after a hearing, the Zoning Board of Appeals denied the application, stating in part, "the proof presented indicates that although there is a city-wide need for modern extended care facilities, statistics from the Chicago Board of Health show that the Rogers Park area has a ratio of 15.9 beds per 1000 population as compared to the city-wide ratio of 3.9 beds per 1000 population; that there are eight existing nursing homes, convalescent homes and homes for the aged within a three block radius of the subject site; that there was no evidence to indicate that the proposed use is necessary for the public convenience at this location; nor that the expansion of such use at this location would not cause substantial injury to the value of other property in the neighborhood  *  *  *."

The Circuit Court of Cook County reversed the decision of the Zoning Board of Appeals and ordered the zoning administrator of the City of Chicago to process plaintiffs' building application for the construction of a five-story nursing home on the premises at 7350-7372 North Sheridan Road. The order of the court stated in part:

"*  *  *  and the Court having considered said Complaint and having fully examined the record made before said Zoning Board, as aforesaid, and the law pertaining thereto, and the Court having heard the arguments of counsel and being fully advised in the premises, the Court Finds the issues in favor of the plaintiffs and against the defendants."

The defendants first contend the trial court did not establish that the decision of the Board of Appeals was contrary to the manifest weight of the evidence and went beyond the authorized scope of judicial review by substituting its judgment for that of the Board. They reach this conclusion because the order of the court did not state that the decision of the Zoning Board of Appeals was "against the manifest weight of the evidence." It simply stated, "the Court finds the issues in favor of the plaintiffs and against the defendants."

In the case of *St. James Temple of the A.O.H. Church of God, Inc., v. Board of Appeals* (1968), 100 Ill.App.2d 302, 309, the court stated:

"On administrative review, the court's function is limited to ascertaining if the findings and decision of the administrative agency are against the manifest weight of the evidence."

In *Roosevelt Memorial Hospital v. Chaddick* (1970), 131 Ill.App.2d 82, relied on by the defendants, the court made no express determination that the finding of the Board was against the manifest weight of the evidence. The reviewing court reversed the trial court, but based its decision on the failure of the hospital to offer evidence with respect to the necessity for the public convenience at that location and whether there would be injury to the value of other property in the neighborhood.

In the instant case there was evidence presented on each of these two points.

■■ The fact that the court did not specifically use the words "manifest weight of the evidence" is not controlling. The issue is whether the evidence in the record was sufficient to determine that the decision of the Board was not supported by the evidence. A decree must be construed with reference to the issues it was intended to decide (*Aloe v. Lowe* (1921), 298 Ill. 404), and it is not the form of the decree which is determinative, but the substance and effect of the adjudication. *Altschuler v. Altschuler* (1948), 399 Ill. 559.

The defendants also contend the plaintiffs failed to prove by competent evidence that the proposed use will meet the standards specified for the issuance of a special use permit. Section 11.10—4 of the Chicago Zoning Ordinance provides in part as follows:

"No special use shall be granted by the Zoning Board of Appeals unless the special use:

(1) a. Is necessary for the public convenience at that location;
    b. Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and

(2) Will not cause substantial injury to the value of other property in the neighborhood in which it is to be located and;

    \*    \*    \*

(4) Such special use shall conform to the applicable regulations of the district in which it is to be located."

The defendants assert the only evidence with respect to whether the use was needed at that location was testimony by Dr. Gordon, who stated there was a need for such homes in a nice neighborhood, and the testimony of Reverend Frecke, who stated there was a need for more nursing homes. The defendants rely heavily on a statistic of the Chicago Board of Health which showed that the Rogers Park area has a ratio of 15.9 beds per 1000

population as compared to the city-wide ratio of 3.9 beds per 1000 population. Another point they make is that there are eight existing nursing homes, convalescent homes, and homes for the aged within a three-block radius of the subject property, and they suggest there is no evidence to indicate the proposed use is necessary for the public convenience at that location.

The City's argument might be persuasive if the plaintiffs were newcomers intending to inject yet another similar use into the area, but the courts have recognized that the enlargement of an existing use causes little, if any, adverse effect on the surrounding properties. (*People ex rel. Joseph Lumber Co. v. City of Chicago* (1949), 402 Ill. 321; *County of Lake v. MacNeal* (1962), 24 Ill.2d 253; *Howard v. Lawton* (1961), 22 Ill.2d 331.) Any harm which may have resulted from the presence of the plaintiffs' nursing homes has already been manifested.

■■ In *Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill.2d 77, the court held that a requirement of public necessity was to be looked at in the context of the community:

> "However, while lack of community need for a use sought to be established on a particular parcel of real estate is relevant to the relative gain to the public, this consideration is not in itself a conclusive or determinative factor (see *Hoffman v. City of Waukegan*, 51 Ill.App.2d 241, 245), at least where, as here, (1) there is no uniformity of uses in the area, and the heterogenous nature of the surrounding uses as well as the trial testimony sustains the trial court determination that the proposed use would have no adverse effect on the adjacent properties (see *Tillitson v. City of Urbana*, 29 Ill.2d 22, 28-9); (2) the denial of the proposed use would in no way benefit the public health, safety or morals; and (3) there is substantial economic loss to the plaintiffs resulting from such denial." 41 Ill.2d 77, 86-87.

In the instant case the plaintiffs have operated the nursing homes for several years, and there is a waiting list for patients. Dr. Harold Gordon, a specialist in internal and geriatric medicine, testified that there is a need for more nursing facilities and that the Sheridan Road location is an appropriate area because of the open boulevard, giving the patients psychological and mental comfort.

Arthur Salk, the architect of the proposed building, testified he had obtained a certificate of need for 225 beds from the State Board of Health. He stated the proposed building would conform to all the requirements of the applicable regulations and ordinances of the City. The building would be substantially similar in height, volume, setback requirements

as other buildings in the area, and would be architecturally compatible with the other structures on the street.

John McNamara, a real estate appraiser, broker, and consultant, testified that the highest and best use of the property was for the development of a nursing home, and that it would be economically unsound to develop the property under the existing R-4 classification. In his opinion the property would be worth $150,000 to $170,000 if developed with an apartment building, as opposed to $300,000 if developed as a nursing home. He further stated the proposed use would not cause an adverse or deleterious effect on the surrounding properties, but would increase their value. The area is undergoing a change, and the proposed expansion of the use is in keeping with the current trend of development. Not one witness testified to the contrary.

If the permit were denied the gain to the public would be small inasmuch as the use has been established at that location for many years, and forcing the plaintiffs to move to another location would be a substantial hardship. It is unrealistic to suggest that the plaintiffs must leave their present location and find one deemed suitable by the Board in order to modernize their facilities in accordance with City and State health department directives. The fact that there are several other homes for the aged in the immediate area cannot be used as a lever to force the plaintiffs out of their business.

The defendants further contend the construction of a five-story building would detract from the residential character of the neighborhood, and the cumulative effect of such expansion, if the other homes in the area were to follow suit, would destroy the area's residential character. The objection voiced by persons living in the area is that the use would cause the institutionalization and decline of the neighborhood. However, no evidence was introduced to support the allegation.

The permitted uses in the R-4 District include many which are institutional in character, such as hospitals and sanitariums; institutions for the aged and for children, colleges and universities; foreign consulates; fraternal, philanthropic and eleemosynary uses or institutions; and schools. Whatever the distinction between permitted uses and special uses, if any, may be, it is clearly not based on a determination of the institutional character of the use. If an institutional use may be included in the district as a matter of right, then a special use may not be excluded solely for that reason.

■■ We believe there is ample evidence in the record to support a finding that the requirements for the granting of a special use have been met, and that the decision of the Zoning Board of Appeals was against the manifest weight of the evidence.

Finally, the plaintiffs request that this court exercise its authority under Supreme Court Rule 366 (Ill. Rev. Stat. 1973, ch. 110A, R. 366) and find that the Lake Michigan and Chicago Lakefront Protection Ordinance (Chicago Municipal Code, ch. 194B), adopted in October 1973, and the Planned Unit Development Ordinance (Chicago Municipal Code, ch. 194A, §§ 11.11 et seq.), adopted in March 1974, are inapplicable because the right to develop their special use vested prior to the enactment of the ordinances.

The defendants assert this court must apply the law as it exists now and must therefore find the plaintiffs are subject to the ordinances. In *Fallon v. Illinois Commerce Com.* (1948), 402 Ill. 516, 526, the court stated:

> "There is no vested right in the continuance of a law   *   *   * and it has been held many times that where the legislature has changed the law pending an appeal the case must be disposed of by the reviewing court under the law as it then exists, and not as it was when judgment was entered in the trial court."

The defendants also assert that a vested right can only be obtained where there has been a substantial change of position, expenditures, or incurrence of obligations by a property owner who has relied on the probable issuance of a permit. (*Dato v. Village of Vernon Hills* (1968), 91 Ill.App.2d 111; *Fifteen Fifty North State Street Building Corp. v. Chicago* (1958), 15 Ill.2d 408.) They contend there was no change of position by the plaintiffs in reliance on the issuance of a permit.

We believe the right to the permit vested when the nursing homes were established years before. At the time of the hearing before the Zoning Board of Appeals the plaintiffs proved they met the requirements of the special use statute (Chicago Municipal Code), ch. 194A, § 11.10—4), and the record of the hearing is devoid of any issues with respect to the pendency of the zoning amendments. *Chicago Title & Trust Co. v. Village of Palatine* (1959), 22 Ill.App.2d 264; *Westerheide v. Obernueferman* (1972), 3 Ill.App.3d 996.

The rule which makes vesting contingent upon a substantial change of position is based on the unfairness of halting a project after one has made expenditures or incurred obligations in a good faith reliance on the issuance of a permit. (*Cos Corporation v. City of Evanston* (1963), 27 Ill.2d 570.) In this case the plaintiffs have operated their business at that location for several years. When they were ordered to make structural changes to upgrade their nursing homes by the State and City departments of health, they made application for a special use permit which would allow them to comply with the new standards in an economically feasible way. To deny the plaintiffs a permit to modernize their existing nursing

facilities by a special use would result in the extinguishment of their business. This would be just as unfair and prejudicial as denying a permit to one who has expended resources in reliance on the probable issuance of a permit for a prospective use.

Under these circumstances we believe the rights of the plaintiffs vested at the time when the present nursing facilities were established and withholding the permit was an unreasonable and arbitrary act. (*Phillips Petroleum Co. v. City of Park Ridge* (1958), 16 Ill.App.2d 555.) We hold the plaintiffs' rights vested before the Lake Michigan and Chicago Lakefront Protection and the Planned United Development ordinances were enacted, and said ordinances are inapplicable to the property here in question.

For these reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO and JOHNSON, JJ., concur.