(No. 50633.-  )

THOMAS J. SCANLON *et al.*, Appellants, v. E. KARL
FAITZ *et al.*, Appellees.

*Opinion filed April 18, 1979.—Rehearing denied May 30, 1979.*

CLARK, J., GOLDENHERSH, C.J., and MORAN, J., dissenting.

Davis, Cichorski & Gardner, of Chicago (Paul E. Peldyak, of counsel), for appellants.

Kozlowski & Smith, of Chicago (Joseph J. Kozlowski and John A. Smith, of counsel), for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

The plaintiffs, Thomas Scanlon and James Hughes, brought suit in the circuit court of Cook County seeking a writ of *mandamus* directing Karl Faitz, in his capacity as the director of building and zoning of the village of Oak Lawn, and his codefendant, the village of Oak Lawn (Village), to allow the plaintiffs to proceed with the construction of two houses for which excavations had been completed. Acting upon an agreed set of facts and briefs, the circuit court ordered the writ to issue. The appellate court vacated the judgment and remanded the cause for a full hearing to determine whether under the circumstances the doctrine of estoppel ought to be applied against the defendants. (27 Ill. App. 3d 1072 (abstract).) After the hearing ordered by the appellate court, the circuit court again ordered that *mandamus* issue. The appellate court reversed and remanded (57 Ill. App. 3d 649), and we granted the plaintiff's petition for leave to appeal (65 Ill. 2d R. 315).

Scanlon and Hughes are home builders. In 1973, they made a package purchase of five parcels of real estate, which included three contiguous 25-foot lots within the Village. On May 26, 1971, a predecessor in title to the three lots had submitted a written petition to the Village's board of appeals for zoning variations. The predecessor asked for variations from the Village's minimum 50-foot-frontage requirement to allow construction of two houses with frontages of only 37½ feet upon the three 25-foot

lots. One week later, on June 2, 1971, the board of appeals held a public hearing and recommended that the variations be allowed. The board did not have jurisdiction itself to allow the variations because the variations sought exceeded 10%, which was the maximum the board could allow under its enabling ordinance. The matter was referred to the Village's board of trustees (see Ill. Rev. Stat. 1971, ch. 24, pars. 11—13—5, 11—13—6), and at a regular meeting of the board of trustees on June 15, 1971, a motion to follow the recommendation of the board of appeals was adopted.

On June 14, 1973, Scanlon filed applications for building permits to construct two houses; the permits were issued by Faitz on July 24, 1973. When the plaintiffs began excavating, a number of area property owners, all of whose houses were on lots with frontages of at least 50 feet, immediately complained. They prepared petitions, and some property owners appeared to object at meetings of the board of trustees and of the Planning and Development Commission. Pursuant to a directive from the board of trustees, Faitz notified the plaintiffs by telephone to stop building activities, and they promptly did so. Because the plaintiffs had not complied with certain procedures required by a local ordinance regulating the subdivision of land, the matter was later referred by the board of trustees to the Planning and Development Commission, which voted unanimously to deny the requested zoning variations. This suit followed.

The plaintiffs contend here that the defendants are estopped from blocking completion of the two houses because they relied on conduct of Village officers, *viz.,* the actions of Village officials in 1971 to grant requested variations, and the issuance of building permits by the Village, and because the plaintiffs will otherwise suffer a substantial financial loss. The defendants argue that the Illinois Municipal Code requires passage of an ordinance to validate a zoning variation where the power to grant the

variation is reserved to the municipality's corporate authority. (Ill. Rev. Stat. 1971, ch. 24, par. 11—13—5.) Because the board of trustees only approved the recommendation of the board of appeals by the adoption of a motion and did not enact an ordinance, they contend that the board of trustees was free to revoke the illegally issued building permits.

There have been circumstances under which application of the doctrine of estoppel *in pais* has been allowed against municipalities (*e.g., Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157; *City of El Paso v. Hoagland* (1906), 224 Ill. 263; *Richards v. City of Highland* (1978), 59 Ill. App. 3d 692; *City of Marseilles v. Hustis* (1975), 27 Ill. App. 3d 454; *People ex rel. Beverly Bank v. Hill* (1966), 75 Ill. App. 2d 69; *Wehrmeister v. Carlman* (1958), 17 Ill. App. 2d 171), but we do not consider it should be allowed under the circumstances here. The statute requiring public notice of hearings on variation requests was not observed, and we do not judge that the plaintiffs showed a clear right to the extraordinary remedy of *mandamus*. See *White v. Board of Appeals* (1970), 45 Ill. 2d 378, 381-82; *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248.

The appellate court properly pointed out the public interest in the matter of petitions for zoning variations. Here a fair opportunity to present objections to the granting of the variations was never had by interested members of the public. Section 11—13—6 of the Illinois Municipal Code provides:

> "No variation shall be made by the board of appeals in municipalities of 500,000 or more population or by ordinance in municipalities of lesser population except in a specific case and after a public hearing before the board of appeals of which there shall be a notice of the time and place of the hearing published at least once, not more than 30 nor less than 15 days before the hearing, in one or more newspapers published in the municipality, or, if

no newspaper is published therein, then in one or more newspapers with a general circulation within the municipality. \*\*\*" (Ill. Rev. Stat. 1971, ch. 24, par. 11—13—6.)

Only one week elapsed between the filing of a petition for the zoning variations with the board of appeals on May 26, 1971, and the hearing and recommendation to grant the variations on June 2, 1971. There is no evidence in the record of any such prior notice of hearing having been given. Indeed it appears it could not have been given, because the petition for the variations was presented only seven days prior to the hearing.

The noncompliance by the Village with the statutorily mandated procedures for granting of the variations thus went beyond the failure of the Village to have enacted a validating ordinance, and it resulted in a denial of participation in the consideration of the petition for variation by members of the public who might be immediately and adversely affected by the allowance of the petition. Actual notice to homeowners in the area was given only when excavation commenced. Objecting property owners took steps at once to register their complaints with the Village authorities.

Under the circumstances here, we cannot say that this is a situation where fairness and justice require application of the equitable doctrine of estoppel. The circuit court erred in ordering issuance of a writ of *mandamus.* The appellate court was correct in reversing the judgment. We consider that under the circumstances the appellate court was correct in remanding the cause to the circuit court for entry of an order directing the Village to refund the permit fees paid by the plaintiffs for the invalid permits. The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE CLARK, dissenting:

The issue in this case is whether the circuit court abused its discretion in weighing two substantial and conflicting interests. On the one side are the interests of two home builders, Thomas Scanlon and James Hughes, who, in good faith, relied to their detriment upon (1) the village board's favorable disposition of a request for a zoning variation, and (2) the issuance, by the village's director of building and zoning, of building permits, which, on their face, appeared to be valid. On the other side are the interests of the village and, indirectly, of the neighbors, who allegedly were not afforded an adequate opportunity to object to the requested zoning variation. The circuit court held that, on this record, the equities favored the two home builders, and commanded the village to permit the two home builders to complete their work. The majority of this court, however, reverses the circuit court, apparently finding that the village's failure to comply with a notice statute (which neither party cited) required the circuit court to allow the village to escape application of the doctrine of equitable estoppel. I disagree.

The leading case on the application of estoppel *in pais* against a municipality is *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157. There, this court explained the application of the rule as follows:

"The general rule is that a city cannot be estopped by an act of its agent beyond the authority conferred upon him. ***

The general rule is qualified, however, to enable a party to invoke the doctrine where his action was induced by the conduct of municipal officers, and where in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by

retracting what its agents had done." (21 Ill. 2d 160-61.)

Thus, in *Cities Service,* this court affirmed the holding of the circuit court that "the construction work was undertaken by the plaintiff after affirmative action and apparent approval by public authorities, and that the city and its officials are estopped from preventing erection of the service station." (21 Ill. 2d 157, 159.) It cannot seriously be disputed that Scanlon and Hughes would not have purchased the property and spent substantial sums toward developing it if the village had not led them to believe that their plans had been approved by the village. Yet the majority attempts to distinguish *Cities Service* on the grounds that here the granting of the variation apparently did not comply with section 11—13—6 of the Illinois Municipal Code, requiring published notice of board of appeals hearings.

Neither party has relied upon the statute however, and in seeking to apply it here, without the benefit of adequate legal argument and factual proof, the court has wandered from the central issue in this case. First, the statute is not jurisdictional and therefore, in itself, not dispositive of this case. Second, since the village failed to raise this issue, the plaintiffs have not had an opportunity to demonstrate that the local residents had constructive notice of the requested variance. There is, in fact, some evidence in the record indicating that the requested variance may have been included in a published agenda of the village board.

Finally, as I read the statute, the duty to publish was that of the board of appeals, and the failure to publish therefore is not chargeable to Scanlon and Hughes. Although the language of the statute is not explicit on this point, my construction is in accord with the general rule in most jurisdictions. (*Cf.* generally 3 R. Anderson, American Law of Zoning sec. 20.17 *et seq.* (2d ed. 1977); Annot., 38 A.L.R.3d 167, sec. 5 (1971).) To punish the plaintiffs for

not looking behind the apparently valid actions of the village is, therefore, in my opinion, manifestly unjust. It can lead only to higher legal costs and higher housing costs for everyone. The decision of the circuit court wisely avoided such a course, and I would affirm its judgment and permit the writ to issue. See *People ex rel. Deddo v. Thompson* (1918), 209 Ill. App. 570 (*mandamus*), cited with approval in *Cities Service*.

GOLDENHERSH, C.J., and MORAN, J., join in this dissent.