THOMAS S. FREDETTE *et al.*, Plaintiff-Appellants, v. THE VILLAGE OF BEECHER *et al.*, Defendants-Appellees.

Third District   No. 3—88—0651

Opinion filed December 28, 1989.

738

BARRY, J., concurring in part and dissenting in part.

Codo, Bonds, Zumstein & Konzelman, of Joliet (Bruce L. Zumstein, of counsel), for appellants.

Edward Burmila, State's Attorney, of Joliet, for appellee County of Will.

Clinton & Tongren, of Peotone (Steven Tongren and Stuart D. Gordon, of counsel), for appellee Village of Beecher.

George A. Marchetti and Stuart D. Gordon, both of Moss & Bloomberg, Ltd., of Bolingbrook, for appellee Board of Health of County of Will.

PRESIDING JUSTICE WOMBACHER delivered the opinion of the court:

The plaintiffs appeal the dismissal of their complaint by the trial court.

The County of Will established a health department in 1943 which has been and continues to be vested with comprehensive authority to provide, protect, promulgate, regulate, and enforce all matters relat-

ing to public health within its jurisdiction.

The Village of Beecher is a municipal entity located within the County of Will. In 1962, the village began operating a sewage treatment plant which was subject to the various regulations and authority of the county health department. In 1963, the Will County Health Department adopted a sewage treatment and disposal ordinance which provides that all sewage treatment or disposal units which have liquid surfaces open to the free atmosphere must be located at least 200 feet from the property line of all adjacent properties. In 1972, a subdivision containing the houses owned by the plaintiffs herein was developed. This subdivision is located within a close proximity to the village's sewage treatment plant.

In 1987, the Village of Beecher desired to construct an aeration lagoon, the purpose of which would be to further aerate the water after all the sewage had been treated and removed within the plant. This lagoon would contain a pool of standing water for sewage treatment purposes, but the plans called for berms and horticultural barriers to surround this lagoon which would provide additional protection for those residing in this subdivision. In order to legally construct this lagoon, the village would have to obtain a variance from the health department because some properties within this subdivision would be located within the protected area covered by this ordinance.

Once an application for variance is filed, any interested person may file a written request for a hearing to determine the merits of a variance. The health authority, which is a designated health officer or county executive officer or representative, has the ability to determine that strict compliance with a health department decision may not be warranted, especially when the anticipatory effects of that decision may cause undue hardship on a petitioner *and* if the health authority finds that public health will be adequately protected and substantial justice done by granting the variance. The health authority may then grant the variance upon such conditions and terms as it deems necessary.

The village filed its variance request with the Will County health authority. The director of the health department granted the variance on November 10, 1987. On November 22, 1987, and on December 29, 1987, a representative of the subdivision property owners asked the county health department to review the director's decision, which it upheld.

The plaintiffs filed a two-count complaint in circuit court against the village, county, and board of health. Count I sought administrative review of the director's and board's decisions, and count II alleged

the Village of Beecher was going to construct an aeration lagoon without receiving the requisite special use permit.

All defendants moved to involuntarily dismiss count I, and the Village of Beecher moved to dismiss count II, and defendants' motions were granted by the trial court.

Plaintiffs then filed an amended complaint, reiterating count I. In addition, plaintiffs alleged that the board induced them not to seek administrative review within 35 days of the director's decision. Instead, the plaintiffs requested administrative review within 35 days of the board's decision. In count II, plaintiffs claimed the Village of Beecher should be estopped from denying the property was classified as an R-3 zone, even though the zoning ordinance classified the property as I-1. The trial court dismissed plaintiffs' amended complaint with prejudice. This appeal follows.

The plaintiffs contend that they filed their complaint for administrative review within the proper time limits prescribed by law, therefore, the trial court erred in dismissing their complaint. On November 20, 1987, the director granted the variance in question. On November 22, 1987, and on December 29, 1987, the plaintiffs inquired of the director as to the merits and reasons for his decision. The board of health thereafter upheld the director's decision on January 13, 1988, following a hearing at which it heard from a representative of the affected property owners (plaintiffs) and the Village of Beecher.

The plaintiffs filed a complaint in circuit court on or about February 16, 1988, which was filed within 35 days of the board's decision, but not within 35 days of the director's decision. The circuit court dismissed count I of plaintiffs' complaint, and in so doing, held that the time for plaintiffs to file this action for administrative review was within 35 days of the director's decision, not the board's decision.

■ Under the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 et seq.), an action for judicial review must be commenced within 35 days of the final administrative decision. If the agency has no rule or statute for review or rehearing, the final order is ripe for review following its rendition.

■ ■ The final decision-making authority with respect to variation requests is vested with the health director. (Will County Sewage Treatment and Disposal Ordinance §13.) There are no provisions within said ordinance of subsequent review procedures of the director's decision by the board, or any other administrative agency. The decision by the director was the final administrative decision for purposes of the Administrative Review Law. (Ill. Rev. Stat. 1987, ch. 110, par. 3—101.) Therefore, plaintiffs' complaint was not filed within

35 days of the director's decision, and the circuit court was correct in dismissing the complaint. Timely filing of an administrative review complaint is a jurisdictional requirement, which cannot be waived. *Fredman Brothers Furniture Co. v. Department of Revenue* (1984), 129 Ill. App. 3d 38, 471 N.E.2d 1037, *aff'd* (1985), 109 Ill. 2d 202, 486 N.E.2d 893.

■ If there is no agency rule or statute which provides for a rehearing, then the petition for rehearing filed with the administrative agency will not toll the 35-day period in an action for judicial review. See *Castaneda v. Human Rights Comm'n* (1988), 175 Ill. App. 3d 1085, 537 N.E.2d 807; *Oliver v. Civil Service Comm'n* (1967), 80 Ill. App. 2d 329, 224 N.E.2d 671.

■ Plaintiffs also argue that the defendant County of Will should be estopped to deny the final decision was made when rendered by the board of health. Regardless of plaintiffs' claim that they were induced to wait until the board rendered its decision in order to invoke the Administrative Review Law and seek judicial review, they should have filed their complaint within 35 days of the director's decision, and we agree that they are now barred from further proceeding therewith. (*Oliver v. Civil Service Comm'n* (1967), 80 Ill. App. 2d 329, 334, 224 N.E.2d 671.) Even though the board placed the director's decision on its agenda for review, it did not have authority to do so, and any decision or further resolution would have been null and void since the County of Will is not a home rule unit. *Oliver v. Civil Service Comm'n*, 80 Ill. App. 2d at 334.

■ The duties of a county board of health include the administrative management of the county health department, enforcement of laws and ordinances related to the preservation of health, and the investigation and inspection of contagious or infectious diseases. (Ill. Rev. Stat. 1987, ch. 111½, pars. 20c12, 20c13.) There exists no law, statute, bylaw, or ordinance giving the board the power to grant or review variances issued by health department directors.

■ Finally, plaintiffs contend the village should be compelled to hold a public hearing regarding the issuance of a special use permit before commencing construction of the lagoon. We agree. The village adopted a zoning ordinance which was intended to promote and protect public health, safety, and welfare and to protect the character and maintain the stability of residential uses within the village. The village should hold a public hearing. Initially, it is not clear what the correct zoning classification was assigned the property on which defendants sought to construct the lagoon, and secondly, when affirmative actions are taken by public authorities causing property owners

to change their position and incur great expenditures which would not have been made but for the affirmative action of the governmental agency, the courts have granted estoppel and required compliance with the rules and regulations which would not otherwise have been in effect. (*People ex rel. Beverly Bank v. Hill* (1966), 75 Ill. App. 2d 69, 221 N.E.2d 40.) This matter should be remanded for further consideration by the circuit court with instructions to determine the correct zoning classification and whether the affected property owners will be caused great expenditure if the village is permitted to proceed with the construction of the lagoon.

Based on the foregoing, the circuit court of Will County is affirmed in part, reversed in part, and this matter is hereby remanded for further consideration in accordance with this opinion.

Affirmed in part; reversed in part and remanded.

SCOTT, J., concurs.

JUSTICE BARRY, concurring in part and dissenting in part:

I agree with my colleagues that the trial court did not err in dismissing count I of plaintiffs' amended complaint for failure to file a complaint in the circuit court within 35 days of the director's November 20, 1987, decision granting the village's petition for a variance. I cannot, however, concur with the majority's disposition of plaintiffs' count II.

The majority instructs the circuit court to determine the "correct" zoning classification and to decide whether plaintiffs "will be caused great expenditure if the village is permitted to proceed with the construction of the lagoon." (192 Ill. App. 3d at 742.) First, the parties do not dispute that the "correct," or legal, zoning classification of the area in question is I-1 (industrial). The record on appeal contains a copy of an ordinance passed and approved by the Village of Beecher Board of Trustees on May 12, 1969, which unambiguously establishes that the area of the proposed lagoon was zoned I-1. Plaintiffs do not allege that the area was reclassified at any later date, but only that the municipality's map has reflected R-3 "for more than 10 years prior to January 13, 1988."

Clearly, as between a zoning ordinance and the municipality's official zoning map, it is the ordinance that controls. (*Oak Forest Mobile Home Park, Inc. v. City of Oak Forest* (1975), 27 Ill. App. 3d 303, 310, 326 N.E.2d 473, 479, citing *Western Pride Builders, Inc. v. Koraska* (1968), 91 Ill. App. 2d 458, 463, 235 N.E.2d 313, 316.) Plain-

tiffs make an estoppel argument based on their vague allegation that unnamed "Village officials" informed one or more of the plaintiffs that the area in question was zoned R-3 as shown on the map.

The law of this State is clear that

> "[e]stoppel against the public is little favored [citations] and is found only in rare and unusual circumstances [citations]. Where governmental activities are concerned, the doctrine cannot be invoked except in extraordinary circumstances [citations] especially where *** public revenues are involved [citation]. Indeed, public policy generally opposes the application of an estoppel against a governmental body where public revenues are involved *even where detrimental reliance is present* [citation]. The paramount consideration is the right of the people, and estoppel will not be applied to defeat a policy adopted to protect the public." (Emphasis added.) (*County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 12-13, 405 N.E.2d 1376, 1381.)

A vested property interest a consequent estoppel against a municipality may be established only upon evidence: (1) of an affirmative act on the part of the municipality; (2) that the affirmative act induced the plaintiffs to act; and (3) that the plaintiffs substantially changed their position as a result of their justifiable reliance. Plaintiffs' failure to allege more than the mere unauthorized act of a ministerial officer or a ministerial misinterpretation may be cause for dismissal of an action grounded upon estoppel. *American National Bank & Trust Co. v. Village of Arlington Heights* (1983), 115 Ill. App. 3d 342, 347, 450 N.E.2d 898, 903, citing *Deer Park Civic Association v. City of Chicago* (1952), 347 Ill. App. 346, 106 N.E.2d 823; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380; *Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 350 N.E.2d 17.

The majority apparently assumes the element of an "affirmative act." In fact, the affirmative act element cannot be assumed. The majority cites *People ex rel. Beverly Bank v. Hill* (1966), 75 Ill. App. 3d 69, 221 N.E.2d 40, as support for its implicit conclusion that plaintiffs' count II of their first amended complaint should not have been dismissed for failure to plead a cause of action upon which relief could be granted. However, it is quite clear from a reading of *Hill* that plaintiffs' allegations of an affirmative act in this case fall far short of the "special facts and circumstances" established in *Hill*.

In *Hill*, plaintiff met with the trustees and president of the Village of Crestwood seeking to have the subject property annexed to the village and zoned for commercial and multiple residential con-

struction. The village president expressed his opinion that plaintiff's proposal would be acceptable and beneficial to the village. A public hearing was held, after which the plan commission recommended to the board of trustees that the requested zoning be granted after the property was effectively annexed. The board of trustees passed the recommendation favorably, and the president told plaintiff that the village had lived up to its part of the bargain. It was not until after all of these actions that plaintiff purchased the property for $134,000. A map was drawn accordingly, showing the subject property zoned for commercial and multiple dwellings. However, no formal ordinance re-zoning the property was adopted. Subsequently, it was learned that the property had been annexed to a first class residential area of the village; and plaintiff brought suit to resolve the zoning issue. On appeal, the *Hill* court ruled that plaintiff had sufficiently established that the municipal officers had affirmatively acted with the approval of everyone interested and that this, together with proof of the elements of inducement and detrimental reliance, sufficed to invoke the estoppel doctrine.

More recently, in *American National Bank & Trust Co. v. Village of Arlington Heights* (1983), 115 Ill. App. 3d 342, 450 N.E.2d 898, plaintiffs presented allegations of an affirmative act much more analogous to those before us today. Specifically, plaintiffs there alleged that the village planner informed plaintiffs that the subject property was zoned B-2 (commercial); that the plat and subdivision committee told plaintiffs that no plan commission hearing would be necessary to proceed with their retail building project; and that the official zoning district map reflected that the property was zoned B-2. In fact, the property had reverted back to R-1 because a conditional ordinance to rezone it to B-2 had expired before plaintiffs proceeded with their development. On these facts, the appellate court ruled that plaintiffs' complaint based on estoppel could not survive defendants' motion to dismiss. The court noted that "the representations made by the village planner and the plat and subdivision committee were the unauthorized acts or misinterpretations of ministerial officers rather than acts of the municipality itself." 115 Ill. App. 3d at 348, 450 N.E.2d at 903.

In this case, as aforesaid, plaintiffs allege merely that "one or more of the plaintiffs" inquired of an unnamed village official about the zoning of the subject property and was/were informed that it was zoned R-3 and was/were shown the official zoning map, which indicated R-3. The majority *sub silencio* finds these allegations sufficient to delay or defeat the construction of the village's aeration lagoon for

its sewage treatment plant. I disagree. In my opinion plaintiffs' allegations of an affirmative act by the municipality fail to establish that the representations were other than unauthorized acts or misinterpretations of ministerial officers. By my view, the map in itself, although misleading, is not and should not be sufficient ground to justify applying estoppel against the municipality and the public it serves.

For these reasons, I would affirm the judgment of the circuit court dismissing with prejudice both counts of plaintiffs' first amended complaint.