INELL EVANS, Personal Representative of the Estate of Marion L. Evans, Deceased, Plaintiff, *v.* CONTROL PRODUCTS CORPORATION *et al.*, Defendants.—(CONTROL PRODUCTS CORPORATION, Third-Party Plaintiff-Appellant *v.* CPC INTERNATIONAL, INC., Third-Party Defendant-Appellee.)

First District (5th Division)   No. 78-854

Opinion filed June 22, 1979.

McKenna, Storer, Rowe, White & Farrug, of Chicago (John W. Storer, Robert S. Soderstrom, and Robin J. Omahana, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (C. Roy Peterson, Richard E. Mueller, and Hugh C. Griffin, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This appeal arises out of a wrongful death action brought by the personal representative of the decedent, Marion L. Evans. Plaintiff sought a judgment against defendants Control Products Corporation (hereinafter Control Products) and others, based on strict liability in tort. Control Products thereafter filed a third-party complaint against CPC International

(hereinafter CPC), decedent's employer, seeking indemnity based on strict liability in tort. CPC's motion to dismiss the third-party complaint was granted by the trial court. The primary action is still pending below. The sole issue for review is whether the fabricator of a product, suing in a third-party action based on strict liability in tort for an alleged defective design, has stated a cause of action sufficient to warrant indemnity from the entity that designed the product. We reverse and remand. The pertinent facts follow.

In 1964 and 1965, Control Products contracted with CPC to fabricate certain control panels designed by CPC. The control panels were to be installed into a "Mor Sweet" production system in a plant operated by CPC in Argo, Illinois. On April 21, 1974, Marion Evans, an employee of CPC, was cleaning a neutralizing tank when steam entered the tank due to an alleged malfunction of certain control panels. As a result, Evans was severely burned and he died several days later. Subsequently, his personal representative, Inell Evans, filed suit against 17 defendants, including Control Products.

Plaintiff's third amended complaint, based on strict liability in tort, alleged that the control panels regulated the entry of steam into the neutralizing tank of the "Mor Sweet" production system and that these panels were designed, manufactured, produced, fabricated and/or sold by Control Products. It further alleged that the control panels were not reasonably safe as they were designed, manufactured and installed without emergency shutoff valves, or adequate safety valves, and/or instructions; that the control panels allowed steam to enter the tank cleaning system without warning; and that such design defect was the proximate cause of death of plaintiff's decedent. Control Products filed an answer denying the material allegations of plaintiff's complaint and admitting only that it fabricated the control panels.

Thereafter, Control Products filed a third-party complaint against CPC which set forth the following: Count I sought indemnity under a strict liability theory; count II alleged an active/passive negligence theory; count III based liability on a breach of implied warranty; count IV alleged misuse by third-party defendant; and count V sought equitable contribution. CPC filed a motion to dismiss on the basis that if the allegations of Control Products were in fact true, it would have an absolute defense to plaintiff's complaint and therefore there would be no legal basis for an indemnity action; that the theories of active/passive negligence and misuse cannot be maintained where plaintiff's complaint was based on strict liability; that a breach of warranty theory was insufficient because third-party plaintiff was the seller and third-party defendant was the buyer; and that Illinois did not recognize contribution among joint tortfeasors.

On May 12, 1977, the trial court ordered the dismissal of counts II, III,

and IV with prejudice; the dismissal of count V without prejudice to refiling at a later date pending the outcome of *Skinner v. Reed-Prentice Division Package Machinery Co.* (1976), 40 Ill. App. 3d 99, 351 N.E.2d 405, on appeal to the Illinois Supreme Court; and leave was granted to amend count I.

In its second amended third-party complaint, Control Products alleged strict liability for defective design in count I and strict liability for supplying defective component parts in count II. Specifically, Control Products alleged that CPC designed the control panels; completely supervised its activities in regards to the product; determined and controlled the designation of all functions which the control panels were to perform; and that Control Products justifiably relied on the skill and expertise of CPC in regards to the creation and design of the product. Control Products further alleged that any liability incurred by it is solely predicated on the unreasonably dangerous and defective design of CPC, which existed at the time it left CPC's control.

Based on a motion to dismiss filed by CPC, count I was stricken. Count II was dismissed on a motion for summary judgment and is not a subject of this appeal. Thereafter, Control Products filed motions to vacate the final order dismissing the second amended third-party complaint and to reinstate count I of that complaint, and for leave to file a third amended third-party complaint including a count II seeking equitable contribution in light of the decision in *Skinner.* However, this motion was subsequently withdrawn when the *Skinner* case was given prospective application only and the motion to vacate the final order was denied. Control Products now appeals from that order.

OPINION

Control Products contends that count I of the second amended third-party complaint states a cause of action for indemnity and therefore it was improperly dismissed by the trial court. In support of this contention, Control Products argues that a properly pleaded third-party complaint states a cause of action for indemnity when it alleges that the third-party defendant is responsible for a design defect which would make it strictly liable in tort to the third-party plaintiff. We agree.

■■ Third-party practice in Illinois is governed by section 25 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 25). Section 25(2) provides, in part, that:

"* * * [A] defendant may by third-party complaint bring in as a defendant a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

In considering a motion to dismiss all well-pleaded facts must be taken as true as well as reasonable inferences which can be drawn from those facts.

(*Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 379 N.E.2d 1206; Ill. Rev. Stat. 1975, ch. 110, par. 45.) The function of a reviewing court is to determine whether the facts alleged in the complaint, uncontested and standing alone, evidence any possibility of recovery. (*Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128, 361 N.E.2d 575.) Should such a possibility appear, the order of dismissal must be vacated.

■■ In order to withstand a motion to dismiss, a third-party complaint seeking indemnity must allege some relationship between the third-party plaintiff and third-party defendant sufficient to warrant application of indemnity principles. (*Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 234 N.E.2d 790; see also *Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542, 316 N.E.2d 516.) In analyzing the sufficiency of the third-party complaint before us, we must, therefore, determine whether or not the pleadings allege facts showing a relationship that would give rise to a duty to indemnify. Count I of Control Products' complaint alleges, in pertinent part, the following:

"6. The third-party plaintiff, CONTROL PRODUCTS CORPORATION, in 1964 and 1965, when it was known as Control Panel Corporation:

(a) assembled and fabricated said control panels strictly in accordance with and pursuant to the plans, blueprints, specifications, parts lists, and wiring and piping diagrams prepared by the engineering department of third-party defendant;

(b) justifiably relied upon the requisite skill, knowledge, and experience that the engineering department of the third-party defendant represented that it had in the creation and design of control panels;

(c) justifiably relied upon the third-party defendant's engineering department's knowledge of the system which said control panels would regulate and of which they would become a part;

(d) did not have an opportunity to observe the system into which the control panels would be installed nor did it receive complete technical data on the configuration and function of the system.

7. The third-party defendant, CPC INTERNATIONAL, by and through its engineering department, in 1964 and 1965, when it was known as Corn Products Company:

(a) conceived, created and designed said control panels:

(b) prepared the plans, blueprints, specifications, parts lists, and wiring and piping diagrams for control panels;

(c) designated the component parts and materials to be used in the assembly and fabrication of control panels;

(d) determined and controlled the designation of all functions which control panels were to perform, control and operate, including safety valves, emergency shutoff valves, and operator instructions;

(e) in effect, manufactured said control panels.

8. In the event that third-party plaintiff, CONTROL PRODUCTS CORPORATION, is held technically liable to the plaintiff, on the theory of strict liability in tort for having assembled and fabricated a defectively designed product, which liability this third-party plaintiff denies, such liability will be solely predicated on the unreasonably dangerous and defective design of the third-party defendant, CPC INTERNATIONAL, which existed at the time said design left the control of CPC INTERNATIONAL, and the third-party plaintiff will be entitled to indemnity from third-party defendant on a theory of strict liability in tort."

■■ ■ Upon analysis of the foregoing allegations, we find that Control Products has alleged the requisite relationship that would give rise to a duty to indemnify. It is well settled in Illinois that:

"The major purpose of strict liability is to place the loss caused by defective products on those who create the risk and reap the profit by placing a defective product in the stream of commerce, regardless of whether the defect resulted from the 'negligence' of the manufacturer." (*Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 82, 338 N.E.2d 857, 860.)

Taking the facts pleaded by Control Products as true, CPC was the designer and manufacturer of the control panels in question and therefore presumably the one who reaped the profits from its manufacture. Hence, the ultimate liability, if any, because of a defective or unreasonably dangerous condition of the product when it left the manufacturer's possession, should rest upon CPC as creator of the product.

In support of its position that Control Products is not entitled to indemnity, CPC argues that if the allegations in Control Products' complaint are correct, the complaint represents a complete defense to the original plaintiff's claims and therefore no legal basis for indemnity exists. However, we reject this argument since a manufacturer has a nondelegable duty to provide a reasonably safe product. (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.) Furthermore, upon a review of the record, we find no facts indicating that Control Products either misused the product or assumed the risk of the defect, which defenses will act to bar recovery in a strict liability action.

Therefore, upon consideration of the pleadings in light of the relationship between third-party plaintiff and third-party defendant and the policy underlying strict liability, we conclude that Control Products has stated a cause of action for indemnity. Consequently, the trial court erred in dismissing count I of the second amended third-party complaint.

As additional support for its position, CPC urges this court to follow the holdings in two recent appellate court decisions, *Templeton v. Blaw-Knox Co.* (1977), 49 Ill. App. 3d 1057, 365 N.E.2d 235, and *Kosovrasti v. Kux Machine Co.* (1978), 58 Ill. App. 3d 892, 375 N.E.2d 832, where the dismissal of third-party complaints based on strict liability and negligence was upheld. In response, Control Products argues, and we agree, that both cases are distinguishable on their facts and therefore should have no bearing on the disposition of this case.

In *Kux*, plaintiff brought an action in strict liability and negligence as a result of injuries sustained while operating a diecasting machine manufactured by Kux. Thereafter, Kux filed a third-party action seeking indemnity from Teledyne, plaintiff's employer. Count I of the third-party complaint alleged that Kux and Teledyne were co-designers and co-manufacturers of the diecasting machine, in that Teledyne declined to purchase the machine with certain safety devices; that if in fact the machine was improperly designed, the unreasonably dangerous condition of the machine was the direct and proximate cause of the active conduct of Teledyne in declining to purchase the machine with certain safety devices; and that the conduct of Kux in selling the machine in an unreasonably dangerous condition was passive in that Kux merely acquiesced in the request of Teledyne, whose conduct in affirmatively declining to purchase the machine with safety devices was the proximate cause of any unreasonably dangerous condition of the machine. The court held that if Kux and Teledyne were co-manufacturers and co-designers, as advanced by Kux, then they were both actively negligent and that Kux's active negligence barred its claim to indemnity from Teledyne. The court further held that the liability of a manufacturer or distributor of a defective or unreasonably dangerous product is qualitatively active and that such negligence cannot be offset against that of a mere subsequent user.

*Kux* and the present case can be distinguished in several ways. First, in *Kux* the pleadings alleged that Teledyne was a co-designer and co-manufacturer of the diecasting machine as a result of its decision not to purchase certain safety devices after the manufacture of the machine, where in this case, the pleadings allege that CPC is the sole designer of the control panels and that the entire design was completed before Control Products assembled the control panels. Thus, Teledyne's participation as a designer was "downstream" from Kux and CPC's participation as a

designer was "upstream" from Control Products. Secondly, in *Kux* the diecasting machine was a system in and of itself, while in the present case, the control panels were but a part of another system. Thirdly, in *Kux*, the court inherently refers to Teledyne's status as that of a "mere subsequent user" in holding that Kux's conduct was qualitatively active and that such negligence cannot be offset against that of Teledyne. However, in the pending case CPC is in the unique position of being the designer, manufacturer, as well as subsequent user of the system into which the control panels were installed.

Likewise, in *Templeton*, plaintiff brought a personal injury action against Blaw-Knox, the manufacturer of the machine which caused the injury. Blaw-Knox then brought a third-party action for indemnity against plaintiff's employer, Jones & Laughlin Steel Corporation. Blaw-Knox alleged, as does Control Products, that Jones & Laughlin solely designed the machine and closely supervised its construction and installation. The trial court's dismissal of the third-party complaint was upheld on appeal on the basis that it failed to establish a relationship upon which a duty to indemnify could be predicated and that Blaw-Knox assumed the risk of manufacturing a defectively designed product.

■■ Notwithstanding the similarities between the facts of both cases, we decline to follow the holding in *Templeton* because it is our position that the rule enunciated by this court is the better and more logical rule. As we noted earlier, there are no facts in the record indicating that Control Products assumed the risk of the defect. The test to be applied in determining whether or not a user has assumed the risk of using a product known to be dangerously defective is a subjective one, taking into account the user's knowledge, understanding and appreciation of the danger as well as the user's age and the obviousness of the defect and danger it poses. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 360 N.E.2d 440.) Applying this test to the facts presented here, we cannot say that Control Products had sufficient notice of the defect and as such it did not assume the risk involved.

The only issue remaining in this case is whether the third-party complaint alleges facts to support a finding that CPC was a "seller" of the control panels within the meaning of strict liability. CPC raises this issue in its brief. In its reply brief and at oral argument, Control Products argued that since CPC did not raise this issue or argue it at trial, it is precluded from raising this issue for the first time on appeal. At oral argument, CPC offered Control Products the opportunity to amend its complaint to include facts responsive to this issue. CPC also cited *Winkler v. Hyster Co.* (1977), 54 Ill. App. 3d 282, 369 N.E.2d 606, as additional support for its position. We agree with Control Products in that CPC's failure to raise this issue at trial precludes us from deciding it on appeal. (*Kravis v. Smith*

*Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.) We also feel that *Winkler v. Hyster* is not dispositive of this issue.

Accordingly, we reverse and remand.

SULLIVAN, P. J., and LORENZ, J., concur.