ERIKA SMITH, Indiv. and as Adm'r to Collect of the Estate of James M. Smith, Deceased, Plaintiff, *v.* F.W.D. CORPORATION *et al.*, Defendants.—(ILLINOIS F.W.D. TRUCK & EQUIPMENT COMPANY, Defendant and Counterplaintiff-Appellant, *v.* THE CITY OF CHICAGO, Counterdefendant-Appellee.)

First District (2nd Division)    No. 81-960

Opinion filed May 11, 1982.—Rehearing denied June 10, 1982.

William Levinson and Scott E. Jenson, both of Chicago (Levinson, Komie & Murray, P. C., of counsel), for appellant.

Stanley Garner, of Chicago (Jeremiah Marsh and William Carlisle Herbert, both of Hopkins & Sutter, of counsel), for appellee.

JUSTICE DOWNING delivered the opinion of the court:

Plaintiff Erika Smith, individually and as administrator of the estate of James Smith, deceased, filed a complaint in the circuit court to recover damages based on a theory of strict products liability. The complaint alleged that plaintiff's decedent, a City of Chicago fire fighter, was killed when he fell from a fire truck. Named as defendants were Seagrave Fire Apparatus, Inc., the manufacturer of the chassis, F.W.D. Corporation, the overall manufacturer of the truck, and Illinois F.W.D. Truck and Equipment Co., the distributor of the truck. Plaintiff alleged that the truck was defective due to the lack of safety belts, shoulder harnesses, and other restraining mechanisms for passengers.

Presently before this court is the appeal of Illinois F.W.D., the distributor, from the dismissal of its counterclaim seeking indemnity from the City of Chicago. The counterclaim alleged that the City advertised for bids for a fire truck, and that Illinois F.W.D. submitted a bid which conformed to "plans, specifications and general conditions" prepared by

the City. The counterclaim alleged that if the fire truck was defective as alleged by plaintiff, the cause of the defect was the design of the truck by the City. The circuit court granted the City's "motion for judgment on the pleadings" (Ill. Rev. Stat. 1979, ch. 110, par. 45(5)) and dismissed the counterclaim against the City.

## I

The counterclaim, in attempting to state a cause of action against the City of Chicago in strict products liability, portrays the City as the designer of the fire truck. Resolution of this appeal requires an understanding of the exact role played by the City with regard to the design of the truck. Once this role is fully understood, we can determine whether the trial court properly granted judgment on the pleadings.

### A.

The City of Chicago is required to follow certain procedures when awarding purchase orders or contracts. These procedures are described in the "Municipal purchasing act for cities of 500,000 or more population." (Ill. Rev. Stat. 1979, ch. 24, pars. 8—10—1 to 8—10—24.) Among other requirements, the City must engage in competitive bidding that is initiated by advertising for bids. The purchasing act states:

> "Advertisements for bids shall describe the character of the proposed contract or agreement in sufficient detail to enable the bidders thereon to know what their obligations will be, either in the advertisement itself, or by reference to *detailed plans and specifications* on file at the time of the publication of the first announcement." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 24, par. 8—10—7.

These procedures were followed by the City in its purchase of the fire truck. The "detailed plans and specifications" required by the act were placed on file by the City, and were appended by Illinois F.W.D. as an exhibit to its reply to the City's motion for judgment on the pleadings in the circuit court. These plans and specifications were thus before the circuit court when it reached its decision and are contained in the record on appeal. Illinois F.W.D.'s allegation that the City designed the fire truck is based solely on the required preparation of these plans and specifications.

The purposes behind requiring governmental units to engage in competitive bidding are to "[i]nvite competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable * * *." (10 McQuillin, Municipal Corporations sec. 29.29, at 302 (3d ed. 1981).) To

achieve these purposes, the plans and specifications should be as detailed as practicable. If they are too detailed, however, the plans and specifications act to limit the number of potential suppliers entering bids. (10 McQuillan, Municipal Corporations sec. 29.53, at 355 (3d ed. 1981).) A proper balance must be struck between detail and generality. The plans and specifications drafted by the City of Chicago achieved this balance.

## B.

The detail specifications for the fire truck begin with a statement of intent. "It is the intent of this Specification to establish the functional requirements of a self-contained 1,000 GPM pumper mounted on a 4 x 2 Cab over Engine Motor Truck Chassis based on commercially available production pumpers of the latest design."

Under the heading of "Guarantee," the specifications provide:

"1. The contractor hereby guarantees that for a period of one (1) year from the date of final acceptance, he will, at his own expense and without cost to the City, * * * make all repairs that may be required or are made necessary by reason of defective design * * *.

2. Defects in design * * * as guaranteed herein shall be corrected in all units furnished."

The specifications further provide, under the heading of "Design and Construction Practices":

"The complete apparatus, assemblies, sub-assemblies, component parts, etc., shall be designed with a factor of safety that is equal or greater than that which is considered standard and acceptable for this class of equipment in Firefighting Service.

Standards are those established by Federal specifications, National Bureau of Standards, the Society of Automotive Engineers, I.A.F.C. and the National Fire Protective Association * * *."

The specifications conclude with general requirements for the various parts of the truck. The description of the cab does not contain any discussion of safety belts, shoulder harnesses, or other restraining mechanisms.

## C.

The circuit court granted the City's "motion for judgment on the pleadings." A motion for judgment on the pleadings, like a motion for summary judgment, submits to the court a question of law as to whether or not there is an issue of fact to be tried. *Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 867, 341 N.E.2d 101.

■■ Although the proceedings below were on a motion for judgment on the pleadings, both parties proceeded as if a motion for summary

judgment was pending. Illinois F.W.D., in response to the City's motion for judgment on the pleadings, filed a reply that had appended to it three exhibits. Included among these exhibits were the plans and specifications discussed above and excerpts from a deposition transcript. The City, in turn, filed a document captioned "Response," to which was also appended an exhibit. Since a motion for judgment on the pleadings is decided solely on the pleadings, and a motion for summary judgment is decided with reference to pleadings, depositions, affidavits, and admissions on file, both parties clearly treated the pending motion as one for summary judgment. The trial court, in light of the actions of the parties, apparently also treated the motion as one for summary judgment. While we do not condone the confusing of two entirely distinct motions, we will also treat the motion as one for summary judgment for the reason of judicial economy.

■■ Treating the motion as one for summary judgment, we hold that the trial court correctly granted the motion. We do not believe that the action by the City in compiling plans and specifications as required by statute amounted to "designing" the truck. The language of the specifications indicates that the party awarded the contract was to design the truck. Since the City did not design the truck or occupy any other role in the chain of distribution other than ultimate consumer, it is not liable in strict products liability for a design defect. We find it unnecessary to resolve the issue briefed by the parties of whether a product designer may be held strictly liable in tort for a design defect. Compare *Harms v. Caterpillar Tractor Co.* (1980), 80 Ill. App. 3d 262, 399 N.E.2d 722, with *Evans v. Control Products Corp.* (1979), 73 Ill. App. 3d 681, 392 N.E.2d 239.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and HARTMAN, J., concur.