CHICAGO FOOD MANAGEMENT, INC., Plaintiff-Appellee, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (2nd Division) No. 86—3261

Opinion filed November 24, 1987.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Julie Elena Brown, Assistant Corporation Counsel, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (Gary L. Starkman and Thomas Flannigan, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff, Chicago Food Management (CFM), brought suit seeking a declaration that contracts it entered into with former Chicago Police Superintendent Richard Brzeczek, on behalf of the Chicago police department (the department), and the Chicago Policemen's Benevolent and Welfare Association (PBA) are valid and enforceable. These contracts gave CFM the exclusive right to provide food vending machines to department facilities. CFM also sought an injunction preventing the city from removing CFM's vending machines. The city appeals from the granting of summary judgment in favor of CFM, raising the following issues: (1) whether the trial court erred in failing to enforce the termination provision in the contract between CFM and the department; (2) whether the trial court erred in holding that a contract entered into by the police superintendent on behalf of the city is valid and enforceable although not in compliance with statutory requirements; and (3) whether the trial court erred in holding the city estopped from asserting the police superintendent's lack of authority to contract with CFM.

On November 9, 1955, the Chicago city council passed an ordinance authorizing the commissioner of public works to enter into a contract with the PBA which would allow the PBA to install automatic coffee and hot chocolate dispensing machines in department facilities. The ordinance provided that any agreement under which the commissioner granted such rights to the PBA is "subject to termination by either party at any time *** upon thirty days written notice." This ordinance has not been repealed.

The PBA, in receivership since 1968, is a private, not-for-profit corporation which pays death benefits to the families of its members. Since 1962, when the State of Illinois authorized payment of government death benefits to the beneficiaries of department personnel (Ill. Rev. Stat. 1985, ch. 108½, par. 5—153), the PBA's membership has consisted of police officers who retired from the department before January 1, 1962.

In order to secure the exclusive right to provide vending services to the department, CFM entered into agreements with the PBA and the department. Although the 1955 ordinance provides that the commissioner of public works is authorized to contract with the PBA, the contract between the PBA and CFM purports to grant to CFM "any

privilege *** [PBA has] received from the department to install vending machines in department facilities." The record is unclear why the department, rather than the commissioner of public works, granted such privileges. The PBA contract, entered into in 1979, contains the following provisions:

> "1. (a) Upon the express conditions that the PBA continue to receive the Department permission to install vending machines at Department locations during the term hereof and that the Department approves and continues to permit CFM to operate vending machines and food service at Department locations, for the term of this agreement, the PBA grants to CFM exclusively such privilege as it receives from the Department to install, maintain, service and operate vending machines. ***

> 1. (b) The term of this Agreement shall *** terminate *** (iii) when the Department ceases to permit operation of vending machine services by CFM.
> * * *

> 3. The PBA makes no representation or warranty of any nature that it will continue to receive from the Department the privilege it now has with respect to such vending machines." .

CFM also agreed to remove its vending machines from department premises upon termination of its rights under the contract.

The department contract was entered into by former Police Superintendent Richard Brzeczek in April 1983, two days before he retired from his position as superintendent. This agreement required CFM to provide cafeteria services to the department in return for the exclusive right to dispense food and nonalcoholic beverages through vending machines. CFM was also to provide security measures in connection with the vending machine operations.

The department agreement is expressly contingent upon continuation of the agreement between CFM and the PBA. It provides:

> "10. (a) This agreement *** shall continue *** until the termination of the currently existing agreement between operator (CFM) and the receiver for the Chicago Policemen's Benevolent and Welfare Association."

On January 9, 1985, Police Superintendent Fred Rice informed John A. McDonald, president of CFM, that the agreement between CFM and the department was illegal and void. Rice asked CFM to remove the equipment from department facilities and cease operations by April 1, 1985.

On January 11, 1985, Jerome R. Butler, commissioner of public works, and William R. Spicer, acting purchasing agent, notified Harry

Young, Jr., receiver for the PBA, that the city was terminating any right that had previously been granted to the PBA to install and operate vending machines in department facilities, effective in 30 days.

Also on January 11, 1985, Chicago corporation counsel, James D. Montgomery, informed John A. McDonald that the agreement between CFM and the department was "an individual and *ultra vires* act by Mr. Brzeczek," and that it was "illegal and void." Montgomery also requested CFM to remove its equipment and cease operations by April 1, 1985.

On February 8, 1985, CFM filed suit against the city and certain of its officers, as well as the PBA and Young, seeking injunctive and declaratory relief. On October 23, 1986, the trial court ruled on cross-motions for summary judgment in favor of CFM. The trial judge made the following findings:

"1. Non-compliance with statutory formalities does not invalidate a contract so long as the contract was authorized or executed by administrative officers acting for the public good.

2. The actions taken by city officials herein in consenting to or executing the contract between CFM and the Chicago police department was [*sic*] in the public good.

3. Plaintiff reasonably relied upon the actions of Chicago police department officers and made substantial expenditures in executing and performing the contract."

The trial court further found that the agreement between CFM and the department was "valid, enforceable and binding in all respects."

OPINION

I

■ Summary judgment should be granted only when there are no genuine issues of material fact to be tried and the movant is entitled to judgment as a matter of law. (*Marquette National Bank v. Walgreen Co.* (1984), 126 Ill. App. 3d 680, 682, 467 N.E.2d 954, 955; *Bohnen International, Inc. v. Liberty Mutual Insurance Co.* (1983), 120 Ill. App. 3d 657, 662, 458 N.E.2d 644, 647.) The city argues that it should have been granted summary judgment, as it properly terminated its contract with CFM according to the termination provision of that contract.

■ A contract must be enforced according to its terms. (*Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 797, 461 N.E.2d 1031, 1034.) Here the contract provisions are clear.

CFM's contract with the department expressly provides that it is contingent upon continuation of the agreement between CFM and the PBA. CFM's agreement with the PBA is contingent upon the PBA's continuing to receive department permission to install vending machines at department locations.

The 1955 ordinance which granted the PBA the right to install and operate vending machines in department facilities also gave both the city and the PBA the right to terminate that arrangement, provided 30 days' written notice was given. By letter of January 11, 1985, Harry Young, Jr., was notified that the city was terminating any and all rights which the commissioner of public works may have granted to the PBA with regard to vending machines. John McDonald, president of CFM, was also informed that the contract was "void and illegal" and that the city and police department were revoking any authority CFM had to maintain vending machines in department facilities.

CFM claims that the city is indirectly terminating the department contract by repudiating the PBA contract. CFM also argues that, because the PBA contract was approved by the PBA receivership court, the city cannot interfere with that agreement.

■■ The city has not repudiated the PBA contract; it merely terminated PBA's rights to install and operate vending machines according to the terms of the 1955 ordinance. A consequence of the city's action is that CFM's contract with the PBA is terminated, as is CFM's agreement with the department. In each of its contracts CFM clearly recognized that its authority to continue operations would be terminated should PBA's authority with regard to the vending machines be withdrawn. Having agreed to this contingency, CFM cannot now avoid the explicit terms of its contracts.

We also note that CFM mischaracterizes the receivership court's role by arguing that the court approved the PBA contract. The receivership court approved only the method and schedule of payments by CFM to the PBA. The record does not indicate that the court reviewed and approved the remaining terms of the contract.

## II

■■ The city next argues that, assuming *arguendo* the department contract was not properly terminated, CFM cannot enforce the contract because it is illegal and void. The City of Chicago's power to contract is limited by law. Only the corporate authorities have the power to bind the city in a contract unless that power is expressly delegated to another. (Ill. Rev. Stat. 1985, ch. 24, par. 2—2—12.) Pur-

suant to the Municipal purchasing act for cities of 500,000 or more population (Illinois Municipal Purchasing Act) (Ill. Rev. Stat. 1985, ch. 24, pars. 8—10—1 through 8—10—24), the city has created a department of purchases, contracts and supplies. This department is headed by the purchasing agent, who is "the sole agent of the municipality in contracting." (Ill. Rev. Stat. 1985, ch. 24, par. 8—10—16.) The act also provides:

> "No department, office, institution, commission, board, agency or instrumentality of any municipality, or any officer or employee thereof, shall be empowered to execute any purchase order or contract *** but all such purchase orders or contracts shall be executed by the purchasing agent." (Ill. Rev. Stat. 1985, ch. 24, par. 8—10—18.)

In addition, the Chicago Municipal Code requires that all contracts be taken in the name of, and run to, the city. Chicago Municipal Code ch. 16—5 (1984).

The agreement entered into by Brzeczek violates these limits on the city's power to contract. The agreement was not authorized by the city council, nor does it comply with the provisions of the Municipal Purchasing Act or the Municipal Code of Chicago. Brzeczek, as police superintendent, had no authority to bind the city to a contract.

CFM argues that Brzeczek's authority to contract is derived from the following statute:

> "The superintendent [of police] shall be responsible for the general management and control of the police department and shall have full and complete authority to administer the department in a manner consistent with the ordinances of the city, the laws of the state, and the rules and regulations of the police board." (Ill. Rev. Stat. 1985, ch. 24, par. 3—7—3.2.)

CFM claims that because the department contract was nonmonetary and designed to implement a court-approved plan, it falls within the statutory authority of the superintendent.

The superintendent's authority to administer the police department does not include the power to contract. The Municipal Purchasing Act and city ordinances provide procedures by which the city contracts for goods and services. Under these laws, Brzeczek had no authority to contract with CFM. Additionally, as discussed above, the receivership court approved only the fee schedule in the PBA contract. It did not approve a "plan" which the department contract was designed to implement. Regardless of its involvement in the PBA contract, the receivership court did not confer authority to contract upon Brzeczek, because it had no power to do so. Such authority must be

delegated by the Chicago city council.

CFM relies on a 1961 opinion by the corporation counsel to argue that the commissioner of public works' authority to execute an agreement with the PBA, granted in the 1955 ordinance, was transferred to the police board by the municipal ordinance creating that body. According to CFM, the police board's contracting power was then transferred to the police superintendent by section 3—7—3.2, cited above.

The 1961 opinion recognized that "custody and control" of police department buildings, records, equipment and other property was transferred from the commissioner of public works to the police board. There is no mention of transfer of any contracting power in either the ordinance or the opinion. The police board had no authority to contract and therefore could not transfer such authority to the police superintendent. The agreement entered into by Brzeczek is illegal and void. The trial court erred in holding that it is "valid, enforceable and binding in all respects."

### III

CFM argues that the city should be estopped from asserting Brzeczek's lack of authority to contract, because of the trial court's findings that CFM reasonably relied on Brzeczek's apparent authority to its detriment and that the PBA contract confers a public benefit, because of the purpose for which the PBA was created. We disagree.

■■■ Ordinary principles of estoppel do not usually apply to public bodies. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447, 220 N.E.2d 415, 425, *cert denied* (1967), 386 U.S. 394, 17 L. Ed. 2d 806, 87 S. Ct. 957.) In order to invoke equitable estoppel against a municipality a party must establish that there was an affirmative act of the municipality *qua* municipality upon which the party substantially relied. (*Lake Shore Riding Academy v. Daley* (1976), 38 Ill. App. 3d 1000, 1003, 350 N.E.2d 17, 19.)

> "The general rule is that a city cannot be estopped by an act of its agent beyond the authority conferred upon him. [Citations.] It has been stated that anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority, and that this is so even though the agent himself may have been unaware of the limitations upon his authority.
>
> * * *
>
> The general rule is qualified, however, to enable a party to invoke the doctrine when his action was induced by the conduct of municipal officers, and where in the absence of such relief he

would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what its agents had done." *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 160-61, 171 N.E.2d 605, 607-08.

See also *Scanlon v. Faitz* (1978), 57 Ill. App. 3d 649, 653-54, 373 N.E.2d 614, 617, *aff'd* (1979), 75 Ill. 2d 472, 389 N.E.2d 571.

■ The equities here do not support CFM's argument for estoppel. CFM apparently made no effort to determine whether Brzeczek had authority to contract for the city, although such information is readily ascertainable in State statutes and city ordinances. CFM was aware that its authority could be terminated at any time with 30 days' notice. Any losses it incurred as a result of this termination were not unforeseen. Neither the city council nor the purchasing agent ratified this agreement, nor is CFM owed money for past services. This is not a case where a contract would be valid but for a procedural error. The department contract is illegal because Brzeczek had no authority to enter into it. To estop the city from asserting the police superintendent's lack of authority to contract would amount to conferring upon him power to perform unauthorized acts, simply because he has already done them. *Selby v. Village of Winfield* (1929), 255 Ill. App. 67, 77.

Reversed.

STAMOS and HARTMAN, JJ., concur.