MARK A. McMAHON, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (2nd Division)   No. 1—02—0536

Opinion filed April 22, 2003.

Richard D. Harris, Cameron M. Nelson, and Brad R. Bertoglio, all of Law Offices of Dick & Harris, of Chicago, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Valerie Quinn, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Mark A. McMahon appeals the dismissal of his complaint

for breach of contract. He claims that the City of Chicago executed and then breached an oral contract with him to produce artwork for the "Riverwalk Gateway" project. We affirm.

Plaintiff has been a fine and commercial artist for 25 years. His work has been commissioned by the National Aeronautics and Space Administration (NASA), Smithsonian Institution, O'Hare International Airport, State of Illinois and numerous corporations. In May 1998, Janet Attarian, an architect employed by the City of Chicago Department of Transportation (CDOT), met with plaintiff and asked him to prepare a proposal to produce a 225-feet-long by 9-feet-high ceramic tile mural for the walls of the "Riverwalk Gateway," a tunnel beneath the Lake Shore Drive bridge across the Chicago River. Plaintiff submitted a proposal with a price of $317,521. On June 11, 1998, Attarian informed plaintiff that he had been awarded the contract at the quoted price and he should begin work immediately to meet the deadline of April 15, 1999. Attarian gave plaintiff a purchase order number, E—8—526. The next day, plaintiff sent an invoice for one-third of the fee to CDOT and referenced the purchase order number. According to the complaint, plaintiff began working "feverishly" on the project. Attarian assisted plaintiff with special arrangements for his preparation of art materials, including "access to a bridge tender's facility so he could sketch from a unique vantage point."

On June 22, 1998, CDOT sent a memorandum to Michael Lash, the curator of public art in the city's department of cultural affairs. The memo was written by Attarian and signed by her supervisor, Stanley Kaderbek, the chief engineer and deputy commissioner of CDOT's bureau of bridges and transit. The memo addressed both the Riverwalk Gateway project and a separate public art project unrelated to this case. The memo said CDOT had "decided that an artist [for the Riverwalk Gateway project] who specialized in representational art would be best" and "Mark McMahon was chosen because his style met all the required criteria." The memo concluded:

"Since none of the artwork was part of the original scope of work[,] we presented our ideas and choice of artist[ ] to the Department of Planning, the Park District and the Mayor's Office. All Departments gave their approval.

It is our hope to involve the public through our chosen artists, thereby allowing us to complete the project in a timely manner. It is our hope that both projects will be out for bid by the end of this month. I have enclosed drawings showing the scope of the projects and proposed areas for tile. Input from your Department is greatly appreciated, and if you have any suggestions I would be happy to discuss them with you."

In early July 1998, CDOT instructed plaintiff to present his work to Michael Lash and the city's public art committee (the committee). On July 24, 1998, the project advisory panel, a subcommittee of the public art committee, met to select an artist. Eight artists including plaintiff were considered. Lash told the panel that plaintiff's samples were more extensive than those of the other candidates because of an effort to circumvent the city's official process for selecting art and "mainlining" the selection of plaintiff. Ultimately, artist Ellen Lanyon was selected for the Riverwalk Gateway project. Lash notified plaintiff that he had not been selected.

Plaintiff filed suit in the United States District Court for the Northern District of Illinois, alleging, *inter alia*, a violation of the Lanham Act (15 U.S.C. § 1125(a)(1) (1994)). In support of his federal claims, plaintiff obtained the depositions of Lash and Gilberto Quinones, a CDOT contract administrator. On October 6, 2000, the federal district court granted the city's motion for summary judgment as to plaintiff's claim under the Lanham Act and dismissed plaintiff's remaining counts, declining to exercise supplemental jurisdiction over the state law claims.

On December 7, 2000, plaintiff filed a three-count complaint against the City of Chicago in the circuit court, alleging: (1) breach of contract; (2) deceptive business and trade practices; and (3) defamation and commercial disparagement. On March 22, 2001, the city filed a motion to dismiss the complaint under section 2—615 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 2000)) for failure to state a cause of action. Plaintiff filed a response to the city's motion to dismiss, attaching selected pages from the Quinones deposition. Plaintiff claimed that the deposition provided a factual basis for his contention that some city officials were known to bypass the city purchasing agent and execute their own contracts. At a hearing on the city's motion to dismiss, the trial court declined to consider the Quinones deposition, finding that it was not relevant to a section 2—615 motion. On October 17, 2001, the trial court granted the city's motion to dismiss and gave plaintiff leave to replead a claim of equitable estoppel. Plaintiff declined to replead, and on January 17, 2002, the trial court entered a final order dismissing all plaintiff's claims.

On appeal, plaintiff asserts that his breach of contract claim should not have been dismissed under section 2—615 of the Code (735 ILCS 5/2—615 (West 2000)) because he sufficiently alleged the existence and breach of an oral contract.

■ A section 2—615 motion to dismiss attacks the sufficiency of a complaint on the basis that the plaintiff has not stated a cause of ac-

tion upon which relief can be granted. *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1037, 700 N.E.2d 157 (1998). Whether the trial court erred is a question of law and the standard of review is *de novo*. *Grund*, 298 Ill. App. 3d at 1037. The reviewing court takes all well-pleaded facts as true and interprets all well-pleaded allegations in the light most favorable to the plaintiff. *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 44-45, 755 N.E.2d 462 (2001). A plaintiff cannot rely on mere conclusions of law or fact; the pleadings must be supported by specific factual allegations. *Jackson*, 197 Ill. 2d at 52. If no set of facts can be proved that would entitle the plaintiff to relief, then dismissal is proper. *Meng v. Maywood Proviso State Bank*, 301 Ill. App. 3d 128, 136, 702 N.E.2d 258 (1998).

■ Purchasing and public works contracts with Illinois municipalities are governed by Article 8, division 10, of the Illinois Municipal Code, which consists of a municipal purchasing act applicable to cities with populations of 500,000 or more. 65 ILCS 5/8—10—1 *et seq.* (West 2000). The Illinois Muncipal Code substantially limits the contracting power of municipal employees:

"No department, office, institution, commission, board, agency or instrumentality of any such municipality, or any officer or employe[e] thereof, shall be empowered to execute any purchase order or contract [involving amounts in excess of $10,000] except as herein specifically authorized, but all such purchase orders or contracts shall be executed by the purchasing agent in conformity with [this statute]." 65 ILCS 5/8—10—18 (West 2000).

"Municipalities are limited to only those powers which are given to them by constitution and statute, and a municipality cannot be bound by a contract that does not comply with the prescribed conditions for the exercise of its power." *Ad-Ex, Inc. v. City of Chicago*, 207 Ill. App. 3d 163, 169, 565 N.E.2d 669 (1990). A purchase order or contract that does not comply with the Illinois Municipal Code "shall be null and void as to the municipality." 65 ILCS 5/8—10—21 (West 2000). See *Stanley Magic-Door, Inc. v. City of Chicago*, 74 Ill. App. 3d 595, 599, 393 N.E.2d 535 (1979). The Chicago Municipal Code provides that the city's chief procurement officer has the powers and duties mandated by the Illinois Municipal Code. Chicago Municipal Code § 2—92—010 (amended September 4, 2002). "No contract shall be binding upon the city, nor shall any work contracted for be commenced *** until the contract *** has been duly executed." Chicago Municipal Code § 2—92—050 (amended July 19, 2000). A municipality's power to contract is limited by statute and the city cannot be bound unless statutory requirements are followed. *Roemheld v. City of Chicago*, 231 Ill. 467, 470-71, 83 N.E. 291 (1907) (where a statute or ordinance specifies how

a city official can bind the city by contract, that method must be followed); *DeKam v. City of Streator*, 316 Ill. 123, 129, 146 N.E. 550 (1925) (a contract expressly prohibited by a valid statute is void; there are no exceptions); *Haas v. Commissioners of Lincoln Park*, 339 Ill. 491, 498, 171 N.E. 526 (1930) (where a charter prescribes how a municipal corporation is to enter into contracts, that method is exclusive and must be followed); *Chicago Food Management, Inc. v. City of Chicago*, 163 Ill. App. 3d 638, 644-45, 516 N.E.2d 880 (1987) (where a city's agents are restricted by law as to the method of contracting, agreements executed by officials lacking authority are illegal and void).

■ A prospective contractor who deals with a municipal corporation is presumed to know the limitations of the power of the city officials to enter into contracts. *Ad-Ex*, 207 Ill. App. 3d at 169; *Metropolitan Water Reclamation District of Greater Chicago v. Civil Service Board of Metropolitan Water Reclamation District of Greater Chicago*, 291 Ill. App. 3d 488, 494, 684 N.E.2d 786 (1997). This expectation is explained in Eugene McQuillin's treatise on municipal law: (1) a prospective contractor must confirm that his contract complies substantially with the city ordinance and is authorized by the controlling law; (2) when a municipality exceeds the law, the person dealing with the municipal official does so at his or her own risk; and (3) if the contract is not authorized, the would-be contractor is deemed a mere volunteer. 10 McQuillin on Municipal Corporations § 29.04, at 250 (3d rev. ed. 1999). Where, as here, a plaintiff relies on the statements of an unauthorized official, the reliance has been held to be unwarranted because the statute has put the party on notice that the official's authority is limited. *Chicago Patrolmen's Ass'n v. City of Chicago*, 56 Ill. 2d 503, 507, 309 N.E.2d 3 (1974).

In this case, plaintiff alleges that Attarian asked him for a proposal, told him he had been awarded the contract, gave him a purchase order number, wrote a memorandum under Kaderbek's signature stating that certain city departments (none of which was the purchasing or procurement department) approved of CDOT's choice of plaintiff, and arranged for plaintiff to gain access to restricted vantage points to work on his sketches. Plaintiff has not alleged that either Attarian or Kaderbek was a procurement officer or purchasing agent under the statute. Although plaintiff states that he was given a purchase order number, he does not allege that an authorized official expressly approved the purchase order or assigned the purchase order number. In fact, issuing purchase order numbers is not among the enumerated powers and duties of a municipal purchasing agent. See 65 ILCS 5/8—10—16 (West 2000); Chicago Municipal Code § 2—92—010 (amended September 4, 2002).

To avoid the clear statutory requirements, plaintiff alleges that Kaderbek had actual or apparent authority to enter into the contract with him under the principles of agency law. Plaintiff contends that, because Attarian obtained a purchase order number, Kaderbek must have been authorized to enter into contracts. In framing this argument in his appellate brief, plaintiff states:

"The Purchasing Statutes do *not* grant *absolute* immunity from the entry of certain of its employees into well documented (as the case at bar) oral contracts—to bind the City. Courts must carefully consider the facts of each individual case, with an eye towards whether actual authority, implied authority or ratification arose during the transaction—all of which were ignored by the Court below. While the statutes limit the circumstances under which authority *can* arise, *they do not eliminate the existence of authority altogether.*" (Emphasis in original.)

Plaintiff uses principles of agency law to argue that Kaderbek was authorized to enter into the contract based on the theory of delegation, apparent authority, implied authority or ratification. Plaintiff supports his claim with the following arguments: the city is allowed to delegate its authority to contract (*Chicago Food Management*, 163 Ill. App. 3d at 646); a city may cloak its employees with the apparent authority to enter into agreements on the city's behalf (*City of Burbank v. Illinois State Labor Relations Board*, 185 Ill. App. 3d 997, 1003, 541 N.E.2d 1259 (1989); *Athanas v. City of Lake Forest*, 276 Ill. App. 3d 48, 54, 657 N.E.2d 1031 (1995)); a contract is valid where a city knowingly ratifies or fails to interfere with a contract made by unauthorized employees (*Great Lakes Dredge & Dock Co. v. City of Chicago*, 353 Ill. 614, 627, 188 N.E. 196 (1933), *Mateyka v. Schroeder*, 152 Ill. App. 3d 854, 866, 504 N.E.2d 1289 (1987)); a city commissioner's knowledge that work is being done for the city's benefit may be imputed to the city (*Welsbach Traffic Signal Co. v. City of Chicago*, 328 Ill. App. 467, 480, 66 N.E.2d 471 (1946)); even where a statute expressly limits the authority of an official, the inconsistent acts of the city act as a waiver on the limitations (*Rankow v. First Chicago Corp.*, 870 F.2d 356, 360 (7th Cir. 1989)); and a third party can hold a defendant liable for the acts of its agent where the defendant created the appearance of authority (*Progress Printing Corp. v. Jane Byrne Political Committee*, 235 Ill. App. 3d 292, 308-09, 601 N.E.2d 1055 (1992)).

Plaintiff further develops the argument by making the following assertions: a showing of the authority of an agent is unnecessary to state a cause of action for breach of contract (*Latex Glove Co. v. Gruen*, 146 Ill. App. 3d 868, 873, 497 N.E.2d 466 (1986)); it is generally

unrealistic and unnecessary for a plaintiff to plead the scope of the relationship between an agent and principal without the benefit of discovery (*Capitol Indemnity Corp. v. Steward Smith Intermediaries, Inc.*, 229 Ill. App. 3d 119, 126, 593 N.E.2d 872 (1992)); unless the relationship is so clear as to be undisputed, the existence and scope of the agency relationship between an agent and principal must be decided by a trier of fact (*Biggerstaff v. Industrial Comm'n*, 171 Ill. App. 3d 845, 849, 525 N.E.2d 1000 (1988)); and if the evidence on the issue is within the control of the adverse party, the adverse party has the burden of proof (*Devers v. Prudential Property & Casualty Insurance Co.*, 86 Ill. App. 3d 542, 546, 408 N.E.2d 462 (1980)).

■ Plaintiff's reliance on principles of delegation, apparent authority, implied authority, ratification and agency law is misplaced within the municipal law context. As the city points out, implied contracts are not recognized in cases involving municipalities: a contract cannot be implied if the statutory method of executing a municipal contract has not been followed. *Roemheld*, 231 Ill. at 470. Implied contracts with municipalities that are *ultra vires*, contrary to statutes, are unenforceable. *Lindahl v. City of Des Plaines*, 210 Ill. App. 3d 281, 290, 568 N.E.2d 1306 (1991), quoting *South Suburban Safeway Lines, Inc. v. Regional Transportation Authority*, 166 Ill. App. 3d 361, 366, 519 N.E.2d 1005 (1988) (no contract may be implied against a municipal corporation where an employee has failed to comply with a statute or ordinance prescribing the method for executing contracts). Unless the power to bind the city in a contract is expressly delegated to someone other than the statutory authority, only corporate authorities may execute contracts. *Chicago Food Management*, 163 Ill. App. 3d at 643. "A municipal contract which is legally prohibited or beyond the power of the municipality is absolutely void and cannot be ratified by later municipal action." *Ad-Ex*, 207 Ill. App. 3d at 172.

■ Here, under both state statutes and city ordinances, only the city's procurement officer or purchasing agent has the authority to contract. Plaintiff has not alleged that the authority to contract had been expressly delegated. Instead he alleges, without factual support, that Kaderbek must have had implied authority. This fails because implied authority results in *ultra vires*, unenforceable contracts. *Lindahl*, 210 Ill. App. 3d at 290. The city also points out that several cases cited by plaintiff are inapplicable because the parties in those cases were private entities not subject to a municipal purchasing act.

In pleading that agency law controls, plaintiff further supports his contentions with statements from the Quinones deposition. However, the Quinones deposition cannot be used by plaintiff to state this claim. The city correctly points out that plaintiff improperly attached selected

pages from the deposition to his reply brief. The trial court disregarded the attachments under *Kirchner v. Greene*, 294 Ill. App. 3d 672, 676-77, 691 N.E.2d 107 (1998) (for the purposes of a section 2—615 motion, a court cannot consider supporting materials, except exhibits attached to and part of the complaint, because the motion alleges only defects on the face of the complaint). Because the deposition was excluded from the trial court record, the material cannot be considered on review. See *Owen Wagener & Co. v. U.S. Bank*, 297 Ill. App. 3d 1045, 1049-50, 697 N.E.2d 902 (1998) (documents not a part of the trial court record will not be considered on appeal). We noted earlier that the trial court offered plaintiff the opportunity to replead claims of equitable estoppel, for which the deposition material might have been relevant, if attached. Plaintiff chose not to do so.

Plaintiff raises a fairness argument, asking this court not to immunize the city from liability for its informal contracts because the city must be held to standards of honesty and fair dealing. We do not see how honesty and fair dealing are promoted by holding the city to unauthorized informal agreements. The municipal purchasing statute circumscribes municipal contracting. It guards against " 'favoritism, improvidence, extravagance, fraud and corruption, [and helps] to secure the best work or supplies at the lowest price practicable.' " *Smith v. F.W.D. Corp.*, 106 Ill. App. 3d 429, 431, 436 N.E.2d 35 (1982), quoting 10 McQuillin on Municipal Corporations § 29.29, at 302 (3d rev. ed. 1981). The enforcement of the statute, not informal contracts, best achieves those aims.

Plaintiff argues that he alleged the existence and breach of a contract because the Lash deposition reveals that funds for his artwork were appropriated by the city. Because the Illinois Municipal Code provides that a contract is unenforceable if there is no appropriation for the expenditure at issue (65 ILCS 5/8—1—7 (West 2000)), plaintiff concludes that a contract with an appropriation must be enforceable. We cannot address this argument because the Lash deposition is unavailable to plaintiff for the same reason that precludes consideration of the Quinones deposition. Plaintiff has not factually pled that an allocation was made to fund his project. That deficiency aside, plaintiff cites no legal authority for his contention that an otherwise invalid contract becomes enforceable if an appropriation has been made. The argument is waived. *Avery v. State Farm Mutual Automobile Insurance Co.*, 321 Ill. App. 3d 269, 276, 746 N.E.2d 1242 (2001) ("[m]ere contentions without argument or citation of authority do not merit consideration on appeal").

Plaintiff contends that the city has not shown that oral contracts are void *ab initio*. But the city was not required to make such a show-

ing. The contract is void, not because it was oral but because it did not comply with statutes and ordinances requiring only designated officials to execute contracts.

Finally, plaintiff argues that his contract could have been valid even though competitive bidding did not occur because section 8—10—4 of the Illinois Municipal Code allows contracts requiring a "high degree of professional skill where the ability or fitness of the individual plays an important part" to be executed without competitive bids. 65 ILCS 5/8—10—4 (West 2000). The city responds that this is yet another reason that the contract was invalid, citing section 8—10—3, which provides that all purchase orders or contracts over $10,000 "shall be let by free and open competitive bidding after advertisement, to the lowest responsible bidder." 65 ILCS 5/8—10—3 (West 2000). The city asserts that, despite the exception for highly skilled jobs, the contract would be void because the project was not publicly advertised nor were proposals solicited. See, *e.g.*, *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners*, 69 Ill. App. 3d 972, 982, 387 N.E.2d 785 (1979) (the trial court properly dismissed a claim where the plaintiff alleged that a "professional skill" contract was unenforceable because it was not competitively bid). The argument is academic. The result in this case did not depend on whether the contract was subject to or exempt from competitive bidding. The dispositive fact is that the contract alleged in the complaint did not comply with the Illinois Municipal Code.

The judgment of the circuit court is affirmed.

Affirmed.

BURKE and GARCIA, JJ., concur.